People of the State of Illinois, Plaintiff-Appellee, v. Guadalupe Ruel, Defendant-Appellant.

Gen. No. 69–101.

Second District.

March 19, 1970.

Roy S. Lasswell, Lasswell and Sodergren, of Geneva, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Ralph J. Gust, Jr., Assistant State's Attorney, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

A jury found the defendant, Guadalupe Ruel, guilty of the murder of Raymond Wilson, an auxiliary police officer of the West Chicago Police Department. The court sentenced the defendant to from thirty-five to seventy-five years in the penitentiary.

He now appeals to this court claiming that the trial court erred: (1), in refusing his instruction on involuntary manslaughter; (2), in limiting his testimony on his own behalf, which would have informed the jury of the background of his life and his experiences, which assertedly had a material bearing on his state of mind just prior to the alleged offense; and (3), in holding that the evidence was sufficient to prove him guilty beyond a reasonable doubt.

On July 25, 1965, the defendant was attending a fundraising carnival, sponsored by the West Chicago Fire Department, at Reed Park. Beer was being sold at the carnival, and on July 22, the first day of the carnival, the defendant, then a minor, when seen drinking beer, was asked to leave the park by Officer Wilson. Again on July 25, the defendant, and several companions, were asked to leave the carnival grounds because of a similar occurrence. No arrests were made on either of these occasions.

On the night of July 25, when requested by Officer Wilson to leave the carnival grounds, the defendant did so for a brief time only and then returned to an area of the carnival where a dance was being held. Subsequently, a conversation ensued between the defendant and Wilson regarding the defendant's failure to leave the grounds; at this time the defendant was not drinking. After this colloquy, the defendant and Wilson separated. At approximately 11:20 p. m., Arthur Crumpler, a plain-clothes detective of the West Chicago Police Department, who was on duty at the carnival, talked with Wilson and assisted him in locating the defendant. Wilson then escorted the defendant away from the crowd and both Crumpler and Wilson asked him why he had not departed from the grounds as requested.

At this point, there is great disparity in the testimony of the material witnesses, but it is clear that Wilson began leading the defendant further away from the crowd; that they stopped; and that the defendant contends that Wilson then struck him and tore buttons off of his shirt. Crumpler testified that he did not see the altercation start in that he had turned back toward the crowd upon hearing noises; and that when he turned around, the defendant and Wilson were struggling.

Dennis Marvin, who had been with the defendant earlier in the evening, and who was present in the vicinity, ran out from the crowd and jumped on Wilson, forcing him to his knees. The defendant then drew the gun from Wilson's holster and began to retreat; Wilson rushed toward him in an apparent effort to retrieve his gun or subdue the defendant and the shooting began—both the defendant and Crumpler discharged their weapons numerous times. The testimony of various witnesses is contradictory with reference to how many shots were fired and who fired first.

In essence, the People's position is that while the defendant was retreating with Wilson's gun in hand, that

Wilson rushed toward him and that the defendant deliberately fired at and hit him with the first shot which he fired. Essentially, the defendant's position is that as he was retreating with the gun in hand, Crumpler fired on him; that he returned the fire and that while so doing, Wilson was accidently struck by the fatal shot.

█ █ Under either theory of the case, we think there was no error in refusing the defendant's instruction on involuntary manslaughter. Ill Rev Stats 1965, c 38, par 9–3, provides in part: "(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them *recklessly*." (Emphasis ours.)

In this case, a careful examination of all of the testimony indicates at most, that the jury could have reached three possible conclusions: the defendant was guilty of murder; or, of voluntary manslaughter, having acted under intense passion or provocation; or, that he was engaged in the use of justifiable force in the defense of his person, having been fired upon by Crumpler, and, therefore, he was guilty of no crime. See: Committee Comments, SHA c 38, § 7–7, pp 282, 283.

There is no testimony whatsoever in the record to substantiate that the defendant was guilty of an act or acts, performed recklessly, which caused Wilson's death. At the time in question, the testimony on behalf of the People indicated that the defendant was shooting at somebody; namely, Wilson; and that the defendant did not just recklessly fire the gun at an undetermined object. The act or acts which caused Wilson's death were, under the evidence, either intentional or accidental. If intentional, the defense of self-defense, on the part of the defendant, is not consistent with death by involuntary manslaughter; and if accidental, the defense of accident, likewise is inconsistent therewith. The jury

378

was fully instructed on murder, voluntary manslaughter, and self-defense. Under these circumstances, an instruction on involuntary manslaughter would have been improper. People v. Dockery, 72 Ill App2d 345, 360, 219 NE 2d 687 (1966).

 We next consider the contention that the court erred in limiting the defendant's testimony on his own behalf as to the background of his life and his experiences, which allegedly had a material bearing on his state of mind. We believe that the trial court's refusal to admit this testimony was correct. Testimony as to the defendant's prior acquaintance with Wilson properly appears in the record in that such testimony is admissible under the general principle that the conduct of an accused on other occasions is relevant where such conduct tends to throw light on his motive in doing the act complained of. 14A ILP, Criminal Law, § 266.

██ We find no relevance, however, as to the defendant's dealings with, and impressions of, other law enforcement officers, since the relationships with others not involved in this action cannot be an issue in this case. Generally, the test of admissibility of evidence is whether it fairly tends to prove the particular offense charged, and any circumstances may be put in evidence which tend to make the proposition at issue either more or less probable. The People v. Galloway, 28 Ill2d 355, 360, 192 NE2d 370 (1963).

██ ██ Clearly, prior encounters with the victim may be relevant where one asserts a defense of self-defense. However, to permit testimony of prior encounters with other officers not involved in the incident in question, would open the door to irrelevant, collateral and unconnected matters. Such evidence would not be helpful, and could only serve to confuse a jury. The evidence must be confined to the matters in issue under the general rule of relevancy. 14A ILP, Criminal Law, § 261.

379

■■ In contending that he was not proven guilty beyond a reasonable doubt, the defendant argues that the People failed to prove express malice in the commission of the crime. Under our statute, however, actual malice need not be proven, and here the jury could reasonably believe that the defendant killed Wilson without lawful justification by an act which he knew created a strong probability of Wilson's death or of great bodily harm to him. See: Committee Comments, SHA c 38, § 9–1(a)(2), pp 392–401.

■■ Furthermore, it is well established that it is within the province of the jury to weigh the evidence, determine the credibility of witnesses, and the guilt or innocence of the accused; and where such evidence is in conflict, the reviewing court will not substitute its judgment for that of the jury, where evidence offered by the People, is sufficient, if believed by the jury, to establish the guilt of the accused beyond a reasonable doubt. The People v. Goodpaster, 35 Ill2d 478, 480, 221 NE2d 251 (1966), cert denied, 386 US 967 (1966).

■ From a careful examination of the testimony in this case, we cannot say that it is so improbable, unreasonable, or unsatisfactory as to justify our entertainment of a reasonable doubt of the defendant's guilt and our interference with the verdict of the jury. Therefore, we affirm the judgment of the trial court.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.