THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER ANDRICOPULOS, Defendant-Appellant.

First District (5th Division)  No. 86—675

Opinion filed October 2, 1987.

900

Dennis M. Doherty, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Robert M. Podlasek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by defendant Peter Andricopulos from an order of the circuit court of Cook County finding him in violation of probation based upon his subsequent participation in a residential burglary. As a result, defendant was sentenced to a term of six years, to run concurrently with a five-year sentence on his original convictions for burglary and theft, respectively.[1] In seeking a reversal of the trial court's order, defendant argues that his confession and its fruits were constitutionally improperly used against him and the court improperly entertained prejudicial information in the proceedings finding him in violation of probation. With respect to his sentence, defendant contends that the court improperly predetermined his violation of probation sentence, it improperly entertained prejudicial information in sentencing him, his sentences were disparate from the one received by his codefendant, or, alternatively, the sentences were excessive, and the court improperly denied defendant's petition for treatment as an

---

[1] After sentencing on these convictions, the State nol-prossed the charge of residential burglary, and the court dismissed the charge.

addict under the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 *et seq.*). For the reasons set forth below, we affirm.

In July and October 1984, defendant was charged with the theft of a motorcycle in Hickory Hills and residential burglary of a home in Palos Hills, respectively. Prior to trial, defendant agreed to cooperate with the Palos Hills police as an undercover informant for the purpose of bargaining with the State's Attorney to reduce the charges against him. As a result, the State reduced the nonprobationable residential burglary charge to commercial burglary. On April 10, 1985, defendant pleaded guilty to the theft and burglary charges. He was sentenced to four years' probation and ordered to pay $1,250 within six months under the theft conviction. He also was sentenced to serve six months of periodic imprisonment based upon this conviction. On the burglary conviction, he was sentenced to 30 months' probation, which was to run concurrently with his theft sentence. The court granted defendant a stay until April 17, 1985.

On April 13, 1985, a Hickory Hills residence was burglarized. The detectives investigating the crime, Michael Tardi and Robert Troy, called the Palos Hills police department to request that it contact defendant and ask that he come into its station; defendant had been named by the burglary victims' daughter as one of the people who knew her parents would be out of town on vacation, and Tardi and Troy knew defendant, having previously arrested him in 1984 for theft. Detective Ralph Jungles, a Palos Hills officer, also was contacted and asked to come into the station; Tardi and Troy believed Jungles had a rapport with defendant based on the fact that he had been one of the officers with whom defendant worked as an undercover informant. The Palos Hills police contacted defendant and he, accompanied by his girlfriend, came to the station. Once at the station, defendant was informed that Detectives Tardi and Troy wanted to speak to him. Tardi and Troy told defendant they would like him to come to the Hickory Hills police station to answer some questions and defendant agreed to do so. Detective Jungles was also requested to accompany them to the Hickory Hills station.

At the station, defendant was informed that Tardi and Troy were conducting an investigation of the residential burglary in Hickory Hills. Tardi further informed defendant of his *Miranda* rights, explained those rights to him, and asked him if he understood them, to which defendant responded that he did. Tardi then asked defendant if he was still willing to answer questions regarding the burglary, defendant said he was, and he signed a *Miranda* warnings waiver

form. Defendant subsequently denied any involvement in the burglary. While his interrogation continued, however, Wes Buss, defendant's suspected companion in the crime, was brought into the police station and made a statement admitting his guilt and implicating defendant. Upon being confronted with Buss' statement, defendant admitted his participation in the burglary, giving an oral statement to that effect and informing the detectives that some of the stolen articles could be retrieved. Detective Jungles, who had also participated in defendant's interrogation, accompanied Detective Troy and defendant to retrieve the stolen items. They first took defendant to a house where he and Buss sold a video recorder; defendant remained in the backseat of the car alone while the detectives went into the house. Thereafter, they went to defendant's home and allowed him to enter the house alone. He returned with some jewelry which had been taken in the burglary. They then returned to the Hickory Hills station.

Detective Tardi subsequently took defendant's written statement. According to the statement, defendant stated that he "understood he was not under arrest," that at the time of the burglary he stayed in his car and acted as a lookout, that his car was used to carry away the proceeds from the burglary, and that he and Buss went to an arcade in Bridgeview where they split up the proceeds. After signing the statement, defendant was placed in the lockup and later processed. Subsequently, he requested and received permission to see his girlfriend. Defendant, who was not handcuffed, met with his girlfriend in a file room and then escaped. He turned himself in at the Hickory Hills station five days later.

At a hearing on defendant's motion to suppress his confession, defendant contended that he was coerced into orally confessing to the crime and signing the written statement. Specifically, he stated that he had been physically abused (slapped, punched and grabbed), that he requested and was denied his right to contact his attorney when Tardi viciously threw a telephone at him and told him that there was enough evidence in a police "folder" to convict him without his cooperation, and that the detectives made promises to him that if he cooperated with them he would not be charged and would be allowed to go home with his girlfriend.

The trial court found that defendant had not been physically abused, as evidenced by a picture taken shortly after the signing of his written statement, *i.e.*, there were no marks on his face or any visible indication of distress; that defendant was not held incommunicado or denied access to his attorney; and no sufficient evidence was presented to show that there was any promise of immunity or leni-

ency for defendant's cooperation. After trial, the court found defendant guilty of violating his probation, and sentenced him as mentioned above. This appeal followed.

## I

■■ ■ In order to determine whether a defendant's statement was made voluntarily, a reviewing court must examine all relevant circumstances surrounding the making of that statement. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) "The test to be applied is whether the statement has been made freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he confessed." (*People v. Britz* (1984), 128 Ill. App. 3d 29, 40, 470 N.E.2d 1059, citing *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) Factors to be considered in making this determination include the duration of a defendant's detention prior to making the statement, a disregard of the necessities of life, deprivation of counsel, deception restricting the defendant's constitutional rights, and the defendant's age, education, emotional characteristics and his experience in criminal matters. (*People v. Britz* (1984), 128 Ill. App. 3d 29, 470 N.E.2d 1059.) A finding by the trial court that the statement was voluntarily made will not be disturbed unless it is contrary to the manifest weight of the evidence. *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.

Defendant, relying on *Brady v. United States* (1970), 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463, first argues he was induced by promises from the detectives that he would not be charged if he cooperated with them and, therefore, his confession should have been suppressed. In *Brady*, the court stated that "even a mild promise of leniency [is] deemed sufficient to bar the confession [where a defendant is in custody, alone and unrepresented by counsel] *** because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." (397 U.S. 742, 754, 25 L. Ed. 2d 747, 760, 90 S. Ct. 1463, 1472.) Here, defendant contends he was induced by the detectives to confess based on his prior relationship with Jungles while working as an undercover informant for the Palos Hills police department and the alleged fact that Jungles confirmed Tardi's promise that only Wes Buss would be charged if defendant cooperated. In support thereof, defendant relies on the trial judge's later statement that "the officers may have permitted the false hope rising in the defendant's mind that he might get leniency if he went along with their program and recovered the property."

We first observe that this was an issue of fact to be determined by the trier of fact, whose function is to weigh the testimony and determine the credibility of witnesses. (*People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317.) It was for the court, therefore, to determine whether the officers did or did not make promises to defendant that he would not be charged at all if he cooperated with them. The court had to further determine whether the fact that the Palos Hills police department had "spoken up" for defendant in his previous theft and burglary trial weighed on the side of defendant's assertion that he was induced to confess as a result of his past relationship with Jungles, thus warranting his apparent belief that he would not be charged if he cooperated with the Hickory Hills police.[2]

■ We believe that the trial judge's statement indicates there was a possibility that defendant could have mistakenly hoped that he would receive leniency, but mistakenly hoping based on his own interpretation of the situation as opposed to receiving a direct or deliberate implied promise from the detectives are not the same. *Brady* is therefore inapplicable to the present case. Under the circumstances, therefore, we cannot say that the trial court's finding that no direct or implied promises were made was erroneous.

■ We further observe that a close relationship between a law enforcement officer and a defendant is but one factor to be considered in the totality of the circumstances surrounding a confession and it does not render a subsequent confession *per se* involuntary. (See *People v. Britz* (1984), 128 Ill. App. 3d 29, 470 N.E.2d 1059.) Here, although Jungles was present during the 35 to 40 minutes that defendant was interrogated, Jungles only questioned defendant for approximately 10 minutes and, as mentioned above, made no promises of leniency to defendant. (See *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870 (police chief with past relationship with the defendant participated in interrogation process only to a very minimal degree).) Nor does the record disclose that Jungles was involved in a scheme with Tardi and Troy in an effort to soften the defendant for interrogation. (*Cf. People v. Britz* (1984), 128 Ill. App. 3d 29, 470 N.E.2d 1059 (youth counselor involved with police to elicit incriminating statements from the defendant while under her influence up to and including day when the defendant made his first statement to the police).) Jungles admitted he had a rapport with defendant, but there is no

---

[2]Jungles did not appear at defendant's theft and burglary trial; his supervisor and another detective appeared as representatives of the Palos Hills police department.

proof that his mere presence during defendant's interrogation and his questioning of defendant for approximately 10 minutes gave rise to an intensive, premeditated scheme to soften defendant to confess to the burglary.

Similarly, the record discloses that defendant was not coerced into confessing as a result of a lengthy interrogation during which he was denied the rudimentary necessities of life and access to counsel, or that he was deceived into giving up his constitutional rights, or that he was at a disadvantage because of his age, education, emotional state and lack of experience in criminal matters. Defendant was at the police station for approximately five hours. During that time he answered questions, left the station to recover the stolen goods, returned to the station and participated in a question and answer session, was fingerprinted and photographed, spent time with his girlfriend, and escaped. It is thus obvious that defendant was not interrogated continuously and was free to leave, having never been handcuffed or locked in a room prior to being placed in the lockup. In fact, he was given permission to talk alone with his girlfriend on at least two occasions. There also is no allegation that defendant was denied the basic necessities of life. With respect to defendant's charge of physical abuse, only his girlfriend and he testified to his having welts on his face, which was clearly rebutted by the photograph taken of him during the police's processing procedure.

We further observe that the question of whether defendant was denied access to counsel was an issue for the trier of fact, a determination of which was dependent upon the credibility of the witnesses. (See *People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317.) Detective Tardi testified that defendant did not want to contact his attorney. Moreover, defendant's contention that he was deprived of his right to an attorney is inconsistent with the fact that he could have called his attorney when he went into his home alone to retrieve the stolen jewelry, but did not make a call. Nor is there any evidence in the record that defendant did not come into the station voluntarily, that he was not free to leave, that he was not given *Miranda* warnings or that he did not understandingly sign the waiver of *Miranda* rights form. (See *People v. Brownson* (1982), 103 Ill. App. 3d 476, 431 N.E.2d 744.) Finally, although defendant was 17 years old at the time of the instant matter, he had a substantial understanding of police procedure; he had worked for the Palos Hills police department as an undercover informant for the purpose of getting the prior theft and burglary charges against him reduced and he was not unfamiliar with being arrested, being taken down to a police station, being informed

of his rights, and being charged.

In light of the foregoing, therefore, we cannot say that defendant was induced to confess or that his will was overcome. Accordingly, under the totality of the circumstances, we therefore hold that the trial court's finding that defendant's confession was voluntary was not against the manifest weight of the evidence.

## II

▮▮▮ Defendant next argues that the trial court's finding that he was in violation of probation should be reversed and remanded for a new hearing on prejudice because the court entertained prejudicial information in taking his codefendant's plea of guilty. Additionally, as a result of the trial court's alleged prejudice, defendant contends that the trial judge should have granted his motion for substitution of judges.

Defendant's motion was filed pursuant to section 114—5(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(c)), which allows filing of a written motion, supported by affidavit, for substitution of judges *at any time for cause.* Specifically, defendant alleged in his motion that as a result of taking his codefendant's plea of guilty, the trial judge inquired into factual reasons in mitigation on his codefendant's behalf which were adverse to him and were made without an opportunity by him to cross-examine. In effect, therefore, defendant argues that this information resulted in an *ex parte* discussion in violation of his due process rights.

The complained-of testimony by defendant's codefendant is as follows:

> "MR. DARRAGH [Defendant's counsel]: Mr. Buss, is that correct; Andricopoulos was outside, you handed the items to him, left the scene with the proceeds, divided the items equally among yourself and Peter Andricopoulos?
>
> DEFENDANT: Yes.
>
> THE COURT: These are the facts stipulated to?
>
> MR. DARRAGH: Yes.
>
> THE COURT: Mr. Buss, is this substantially what occurred and are these the facts to which you are pleading guilty?
>
> DEFENDANT: Peter Andricopoulos had a little more to do with it than what it says in the report.
>
> THE COURT: What else?
>
> DEFENDANT: Well, it was more or less his idea, getting me to do it. He was doing work-release. He needed money to get his girlfriend an apartment. She was living at his house

with his mother and father. I helped him do this burglary. He got arrested and told on me.

The police called my house or went over to my house. I went to the police station. Pete told me to go ahead and tell them I did it. His lawyer would get me out of going to jail.
* * *
MR. DARRAGH: Your Honor, may I interject? Could the record be clear, neither I nor any member of the Public Defender's office is the attorney for Peter Andricopoulos?

THE COURT: Yes. I think he has private counsel if I recall correctly.

Mr. Buss, then having been advised of your Rights, do you understand them?

DEFENDANT: Yes, sir."

Defendant asserts that the above testimony prejudiced the trial judge against him, as evidenced by the following statement made by the judge at his sentencing hearing:

"It was a strong indication from the evidence in the case that you were placed on Probation on April 10, 1985. It indicates you may have been aware, if you were not, that the Mix [the burglary victims] were on vacation, and perhaps the Mix affair was in the planning stage. You told the Court, as I recall, you came in a day or two later and asked that the hours be changed so that you could go to work and spend more time going to and from work. You also asked that the mittimus be stayed for a period of time, which I am beginning to think now this was another con to commit the offense."

A defendant's right to substitution of judges for cause is not absolute; a defendant has the burden to substantiate such prejudice on the part of the judge which disqualifies him from sitting as the judge in the case. (*People v. Dunigan* (1981), 96 Ill. App. 3d 799, 421 N.E.2d 1319.) "[T]he alleged bias or prejudice must be shown to have stemmed from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case." (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 565, 400 N.E.2d 436.) " 'Prejudice is a condition of the mind that imports the formation of a fixed anticipatory judgment as distinguished from opinions which yield to evidence.' " (*People v. Washington* (1984), 121 Ill. App. 3d 479, 485, 459 N.E.2d 1029, quoting *People v. Robinson* (1974), 18 Ill. App. 3d 804, 807, 310 N.E.2d 652.) It is also well established that a trial judge is under no duty to recuse himself from the trial because he presided at the trial of codefendants or even

because he presided at a prior trial of the same defendant in the same cause. Additionally, where a trial court is aware of a defendant's specific reasons for seeking a change of judges, having conducted the proceedings prompting the request, he is in the best position to determine the merits of the motion. *People v. Polk* (1973), 55 Ill. 2d 327, 303 N.E.2d 137.

■ Here, contrary to defendant's argument, we find that the above-quoted excerpts do not show that the trial judge had formed an opinion on the merits of defendant's case based on defendant's codefendant's testimony. The judge did not express any conviction of defendant's guilt (see *People v. Robinson* (1974), 18 Ill. App. 3d 804, 310 N.E.2d 652); he simply listened to Buss' version of mitigating circumstances at his sentencing hearing. Similarly, the remarks made by the judge at defendant's sentencing hearing evidences only his belief in the possibility that defendant could have been planning the Mix burglary in light of his request for a stay and a change in work hours. All of the comments are otherwise supported by defendant's own admissions concerning his involvement in the burglary and the details thereof and that he purposely "tricked" his codefendant into confessing to the crime in the hope that he himself would not be charged. Accordingly, we find no showing that the trial judge had any knowledge *dehors* the record or that he was prejudiced or biased by any comments made by defendant's codefendant. Finally, based on the fact that the trial judge presided over defendant's codefendant's trial, which prompted defendant's motion for substitution of judges, we find he was in the best position to determine the merits of the motion.

Under the foregoing circumstances, we hold that the trial court did not entertain prejudicial information against defendant and it properly denied defendant's motion for substitution of judges.

## III

■ Defendant's final contentions on appeal concern his sentence. He argues that the trial court improperly predetermined his violation of probation sentence, that the court was prejudiced against him, that the sentences imposed are disparate or, alternatively, excessive, and that the court improperly refused to consider his treatment as an addict under the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 *et seq.*). We disagree with defendant.

First, we do not believe that the remarks made by the trial judge at defendant's original trial for theft and burglary constitute a predetermination of sentence. The complained-of remarks made by the judge were that if defendant violated his probation sentence in any

manner, the judge would sentence him to the penitentiary and that he was going to write it down as a condition of defendant's probation and make the term of imprisonment five years. At defendant's revocation of probation hearing, however, the trial judge stated he did not recall his remarks and then added, upon reflection, that he believed they were imprudent but explained it was his intent only to impress upon defendant the severity of the offenses for which he was being sentenced to probation. We further observe that any alleged predetermination of sentence was never made a part of the probation orders and was never written down. Additionally, the court sentenced defendant to six years, not five, on the burglary conviction, which was within the statutory limits providing for a sentence of not less than three years and not more than seven (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(5)), and five years on the theft conviction, which was also within the statutory limits (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(6)). Upon revocation of probation, a court may impose any sentence that could have been imposed at the time of the initial sentencing. (See *People v. Jones* (1980), 82 Ill. App. 3d 367, 401 N.E.2d 287.) The trial judge's comments, therefore, although imprudent, were not of substantial magnitude, when viewed in light of the entire record, to require reversal. (See *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 431 N.E.2d 1154.) We therefore hold that the trial court did not predetermine defendant's violation of probation sentence.

We also reject defendant's argument that the trial court was prejudiced against him, based on information obtained from his codefendant's trial adverse to him, for the reasons previously stated in point II of this opinion.

■■ ■ Similarly, we must disagree with defendant that his sentence is disparate from that of his codefendant's or, alternatively, excessive. It is well settled that an appellant is responsible for providing a record which shows the errors claimed; where the record is incomplete, or is silent, a reviewing court will invoke the presumption that the trial court ruled or acted correctly. (*People v. Hamilton* (1978), 64 Ill. App. 3d 276, 381 N.E.2d 74.) Here, defendant makes various allegations as to the disparity and/or excessiveness of his sentences, including that he received a greater sentence, six years compared to the four years received by his codefendant, because he elected to proceed to trial. This latter allegation is without merit; the record indicates that the trial court specifically stated that to base the sentence on such a consideration would be improper, and we have no reason to believe that it did consider such a factor. Moreover, mere disparity between a sentence imposed on a defendant who stands trial and an-

other who pleads guilty does not of itself necessitate action by a reviewing court. (*People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685.) With respect to defendant's additional allegations, we are unable to review them as the record does not contain the presentence investigation report on defendant or his codefendant[3] indicating their "prior records" referred to in defendant's appellate brief. Since defendant has failed to sustain his burden of proof to support this claim of error, we find no reason to disturb the sentences imposed by the trial court, which were within the statutory limits.

■ Lastly, we reject defendant's argument that the trial court improperly refused to consider sentencing him as an addict under the Alcoholism and Substance Abuse Act (the Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 *et seq.*). Although a report was submitted by the proper agency finding that defendant was an addict and eligible for treatment under the Act, the opinions of experts are not binding on the court. (See *People v. Fox* (1979), 69 Ill. App. 3d 11, 386 N.E.2d 1138.) Granting of treatment under the Act is a matter within the sound discretion of the trial court. (*People v. Davis* (1976), 42 Ill. App. 3d 485, 355 N.E.2d 730.) The court may consider a defendant's record and the likelihood of his rehabilitation under the program. "Although the purpose of the Act is to prevent drug abuse and encourage the treatment and rehabilitation of drug addicts, this policy must be balanced against the equally laudable goals of protecting society against the consequences of an addict's actions and punishment for wrongdoing." (*People v. Williams* (1985), 138 Ill. App. 3d 592, 594, 486 N.E.2d 333.) In reviewing a trial court's determination of a defendant's eligibility for sentencing under the Act's provisions, we must defer to the trial court's superior ability to weigh credibility and evaluate the record made at the hearing in aggravation and mitigation (*People v. Fox* (1979), 69 Ill. App. 3d 11, 386 N.E.2d 1138) and, absent a showing the court abused its discretion or acted in a purely arbitrary manner, the court's denial of a petition for treatment under the Act will not be reversed (*People v. Williams* (1985), 138 Ill. App. 3d 592, 486 N.E.2d 333).

■ Here, defendant first argues that the residential burglary charge, which prompted his revocation of probation hearing, did not qualify as "other criminal proceedings" barring placement or consid-

---

[3]Although it appears from the supplemental record that defendant's codefendant waived the written presentence investigation report at his sentencing hearing, the burden was on defendant to support his claim of error with other facts from the record.

eration under the Act. He relies on *People v. Morguez* (1980), 90 Ill. App. 3d 471, 413 N.E.2d 128, which held that where a defendant's guilt has been adjudicated or the defendant had entered a plea of guilty and is merely awaiting sentencing, there are no "pending felony charges" as contemplated by the Act. In the present case, however, defendant had not entered a guilty plea to the residential burglary prior to his revocation of probation sentence, he had not been tried for that offense and, thus, he was not merely awaiting sentencing. (See *People v. Jones* (1980), 81 Ill. App. 3d 367, 401 N.E.2d 287 (a crime alleged in a petition to revoke probation is a *separate offense* for which the defendant may not be sentenced until he has been charged, tried, and convicted in the manner set forth by law); *People v. Moore* (1976), 37 Ill. App. 3d 592, 346 N.E.2d 97 (where criminal proceedings alleging felonies committed while the defendant was on probation were pending against the defendant at the time of his revocation of probation hearing, the defendant was ineligible for treatment under the Act).) The residential burglary charge, therefore, was a "pending criminal proceeding" as contemplated by the Act, notwithstanding the fact that the State nol-prossed the charge after the trial court sentenced defendant in the revocation proceeding.

■■ We further observe that the trial judge set out his reasons for denying defendant treatment under the Act, *i.e.*, that he believed defendant had "conned" the court into allowing a stay and permission to change his work hours three days prior to the residential burglary, he conned the police and his parents for the purpose of getting them to support his original request for probation, and he committed the burglary just three days after being admonished of the seriousness of his offenses against the public without, apparently, any regard for the right of people to be secure in their homes. The court also considered the fact that in April 1985, prior to sentencing defendant to probation, it advised him of his right to request treatment under the Act, but defendant stated he used only marijuana and, apparently, did not so apply for treatment. Defendant subsequently, after being charged with the burglary prompting his probation revocation hearing, did apply for treatment under the Act. We do not address here what the proper time to apply for treatment is under the statute, but, under the circumstances in the present case, it appears that the trial judge thought this was another "con" by defendant; that defendant was not genuinely interested in becoming rehabilitated. In any event, the trial judge was in the best position to evaluate the credibility of the witnesses and we cannot say he acted arbitrarily, again, in light of his comments and the fact that defendant failed to include his presen-

tence investigation report for our review. Accordingly, we affirm the trial court's denial of defendant's petition for treatment under the Act.

For the foregoing reasons, therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P.J., and LORENZ, J., concur.