THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THOMAS DAMNITZ, Defendant-Appellant.

First District (2nd Division)   No. 1—91—3220

Opinion filed December 27, 1994.—Rehearing denied January 30, 1995.

McCORMICK, J., dissenting.

Larry D. Drury, of Larry D. Drury, Ltd., of Chicago (Ronald D. Hayes and Karen G. Shields, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Kevin J. Golden, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:
A jury found Thomas Damnitz guilty of armed violence, aggravated battery by great bodily harm, and aggravated battery involving use of a deadly weapon, but not guilty of attempted murder and aggravated battery by permanent disability. The circuit court sentenced him to incarceration for 25 years on the armed violence conviction. He appeals his conviction and sentence, raising issues concerning the improper exclusion of evidence, impermissible double enhancement, improper refusal of the court to transfer his motion for substitution of judge to another judge for consideration, and the

consideration of improper factors in sentencing. For reasons that follow, we affirm.

At approximately 3 a.m. on November 29, 1987, as Francisco Vargas drove past a school, he heard the loud sound of something hitting the side of his car. Vargas got out of the car and saw defendant standing in the schoolyard. Vargas chased defendant and hit him with a stick, knocking him to the ground. Vargas went back to his car. A few minutes later defendant shot Vargas.

Defense counsel indicated that he intended to present witnesses other than defendant who would testify that Hispanic gang members firebombed defendant's home and shot at him. The circuit court instructed defense counsel not to present such evidence unless he could prove that Vargas was involved in the incidents, and ordered him to make an offer of proof concerning the testimony of each witness before calling the witness. Defendant objected to the requirement, but made the offers of proof. The court ruled that the other witnesses could testify, on subjects of which the court approved, only after defendant testified.

The court allowed defendant to describe a prior incident in which he said that Vargas, who was with a group of young members of the Spanish Cobras, a street gang, threatened to beat up defendant. Defendant's other witnesses corroborated this testimony. Defendant also related that Vargas and another Hispanic youth on another occasion tried to start a fight with him on the street.

The jury found defendant not guilty of attempted murder and aggravated battery by permanent disability, but guilty of armed violence, aggravated battery by great bodily harm, and aggravated battery involving use of a deadly weapon.

Between the end of trial and the sentencing date, defendant filed a written motion for substitution of judge for cause, along with other post-trial motions. The motion for substitution and the supporting affidavit described several incidents at trial, including the court's refusal to allow defendant to call any witnesses without first telling the court and the prosecutor what the witness would say, while placing no similar restriction on the prosecution. Defendant also stated in his affidavit that after the jury returned the verdicts the court said "words to the effect that if he would have heard the case he would have convicted the Defendant of attempted 1st degree murder; anyone who pulls a gun intends to kill." Defendant argued the judge was prejudiced because he believed defendant guilty of a charge on which the jury found him not guilty.

When the court started to set a date for hearing the motions, defense counsel said:

"With respect to the motion for substitution of Judge, your Honor, I believe I'm accurate in stating that the statute provides that your Honor cannot hear that motion, that it has to be transferred immediately to another judge for hearing."

The court answered, "It's not going to be transferred." Counsel reiterated that the statute required transfer for hearing the motion: "[T]he judge to whom the motion is presented cannot hear the motion. It has to be assigned out to another judge for consideration."

At the date for hearing the motion, defense counsel again said that "the law requires this Court to do nothing more than send it to another Judge, the chief Judge, of this division for reassignment to consider the question whether this Court is undu[l]ly biased." The prosecutor said defendant needed to make the motion prior to any substantive ruling in the case, so the motion came too late. The judge denied the motion because he found that he was not prejudiced.

Defense counsel reiterated his position that the court had no right to proceed on the other motions until a judge with the power to do so heard the motion for substitution. The court instructed counsel to proceed on his other motions, agreeing that defendant was not waiving any right to challenge the propriety of the ruling on the first motion. The court denied all motions and sentenced defendant to 25 years in the custody of the Department of Corrections on the armed violence charge. No sentence was imposed on either aggravated battery charge.

Defendant moved for reconsideration of the post-trial motions and sentencing, arguing once more that the court violated statutory procedures by hearing and deciding the motion for substitution of judge for cause. The court denied the motion for reconsideration, and defendant filed a timely notice of appeal.

I

■ On appeal defendant again argues that the circuit court violated procedures mandated by statute when he refused to transfer to another judge the motion for substitution of judge for cause. The State answers that defendant waived the issue, stating that "defendant never objected to the trial court ruling on his motion for substitution of judge." Defense counsel, however, objected to the circuit court setting a date for hearing the motion for substitution, objected at the hearing to the failure to assign the motion to another judge, both before and after the judge ruled on the merits of the motion, and again objected to the refusal to send the motion to another judge in defendant's post-sentencing motion. Defendant more than adequately preserved the issue for review.

Section 114—5(d) of the Code of Criminal Procedure of 1963 provides:

"[A]ny defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion." Ill. Rev. Stat. 1991, ch. 38, par. 114—5(d) (now 725 ILCS 5/114—5(d) (West 1992)).

The right to a substitution of judge for cause is not absolute, and the burden of establishing cause rests with the moving party. (*In re C.S.* (1991), 215 Ill. App. 3d 600, 575 N.E.2d 1; *People v. Andricopulos* (1987), 162 Ill. App. 3d 899, 516 N.E.2d 302, *appeal denied* (1988), 118 Ill. 2d 546, 520 N.E.2d 388.) Here, defendant failed to establish even a threshold basis for his substitution motion. In contrast to *People v. Brim* (1993), 241 Ill. App. 3d 245, 249, 608 N.E.2d 958, *appeal denied* (1993), 151 Ill. 2d 568, 616 N.E.2d 339, where it was alleged that the judge's own misconduct had caused an improper judgment, here defendant's bases for his motion for substitution of judge—the judge's trial rulings and the statement allegedly made by the judge to the jury after the verdict—did not lead to an improper verdict and do not support any valid allegations of prejudice.

Defendant swore in his affidavit that the court showed prejudice near the end of trial by requiring defendant to present an offer of proof concerning the testimony of each witness before calling the witness.

The record reflects that the reason the trial judge imposed the requirement of an offer of proof was that defense counsel had made it clear that he intended to present prior-occurrence evidence, the admissibility of which was doubtful. Given that known risk, the judge properly held that an offer of proof would be required so that he could rule on the relevance of the evidence before it was presented in open court in the presence of the jury.

If we were to agree with defendant's position, we would be stating that where a defendant alleges that a trial judge is prejudiced against him, as shown by *correct* evidentiary rulings, that judge must cease all proceedings so that another judge can conduct a hearing into the alleged prejudice. That principle is absurd. It is not countenanced by any reasonable interpretation of the right to substitute judges and will not receive our approval.

Moreover, even *incorrect* evidentiary rulings of trial judges, without more, cannot justify the procedure defendant insists upon here. The United States Supreme Court recently articulated this principle when it said, "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." (*Liteky v. United States*

(1994), 510 U.S. 540, 554, 127 L. Ed. 2d 474, 490, 114 S. Ct. 1147, 1157.) Indeed, allowing an evidentiary ruling (whether correct or incorrect) to be a basis for a motion to substitute a judge for cause would encourage litigants to make such a motion whenever they are subjected to an unfavorable ruling—and to do so immediately after the ruling lest a tardy motion be subject to a timeliness objection. Needless to say, this court will not give its imprimatur to a procedure that would result in the wholesale transfer of cases to "neutral" judges for review of every contested ruling. Given the adequate opportunity for review of evidentiary rulings provided both by post-trial proceedings and by appellate scrutiny, such a radical departure from current practice is unjustified and ill-advised.

The other basis relied upon by defendant to require the involvement of a neutral judge is that after the jury returned the verdicts the trial court said "words to the effect that if he would have heard the case he would have convicted the Defendant of attempted 1st degree murder; anyone who pulls a gun intends to kill, no one just hands a gun over to someone like the Defendant stated."[1] Assuming, *arguendo*, that the judge said what defendant alleged he said, what is the implication of that fact? Does a statement by a judge that a defendant, who has been found guilty by a jury of a Class X felony, would have been found guilty by him of an offense punishable as a Class X offense require a "neutral" judge to determine whether the trial judge is so prejudiced that he may not continue? Of course not. To say otherwise ignores two well-established principles: (1) a trial judge may impose a greater sentence on a defendant who is deemed to have committed perjury (*United States v. Dunnigan* (1993), 507 U.S. 87, 122 L. Ed. 2d 445, 113 S. Ct. 1111; *United States v. Grayson* (1978), 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610; *People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314); and (2) a trial judge is presumed to consider and rely upon only competent evidence in determining sentence (*People v. Johnson* (1992), 149 Ill. 2d 118, 155, 594 N.E.2d 253, 271, *cert. denied* (1993), 506 U.S. 1056, 122 L. Ed. 2d 138, 113 S. Ct. 986; *People v. Phillips* (1989), 127 Ill. 2d 499, 537, 538

---

[1]It is interesting to note that this allegation is the twenty-fourth one in defendant's motion for substitution of judge, which contains 25 allegations. That motion demonstrates why the trial court gave it short shrift, and why we should do likewise. Its shotgun approach is illustrated by its many frivolous allegations designed to demonstrate that the trial judge was prejudiced against defendant, such as that the judge furnished coffee and donuts to the jurors and, adhering to supreme court rules, allowed only seven peremptory challenges to both sides.

N.E.2d 500, 516, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290; *People v. Morgan* (1986), 112 Ill. 2d 111, 144, 492 N.E.2d 1303, 1317, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329).

To say otherwise also ignores the general rule that a disqualifying alleged bias of a trial judge "must be shown to have stemmed from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 565, 400 N.E.2d 436, 447, *cert. denied* (1981), 449 U.S. 1077, 66 L. Ed. 2d 799, 101 S. Ct. 855; *United States v. Grinnell Corp.* (1966), 384 U.S. 563, 583, 16 L. Ed. 2d 778, 793, 86 S. Ct. 1698, 1710.) In this regard, the following cautionary statement of the United States Supreme Court is highly relevant:

> "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555, 127 L. Ed. 2d at 491, 114 S. Ct. at 1157.

Finally, to say otherwise ignores the holdings of many cases that have upheld the refusal of judges to recuse themselves when confronted with circumstances that might have compromised their impartiality or when confronted with a specific substitution-of-judge-for-cause motion. For example, in *People v. Hall* (1986), 114 Ill. 2d 376, 499 N.E.2d 1335, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618, our supreme court held that there was no duty for a trial judge to recuse himself even after he had been struck by the defendant. In *People v. Jimenez* (1989), 191 Ill. App. 3d 13, 547 N.E.2d 616, *appeal denied* (1990), 131 Ill. 2d 563, 553 N.E.2d 399, we held that, where the defendant's courtroom conduct prompted the judge to "order" the prosecutor to charge the defendant with attempted murder, the judge was not required to transfer an ensuing motion for substitution-of-judge-for-cause to another judge. In *People v. Blackwell* (1980), 80 Ill. App. 3d 302, 399 N.E.2d 696, where the defendant was acquitted of murder and convicted of involuntary manslaughter, the appellate court reviewed the record and found no basis for concluding that the trial judge had rejected the jury's verdict, even though the judge had questioned the truth of the defendant's version of events and said "that he could not guess how

the jury reached its verdict." *Blackwell*, 80 Ill. App. 3d at 305, 399 N.E.2d at 698.

In this case, the trial judge's remarks were similar to those of the trial judge in *Blackwell*; as in that case, his remarks did not signify rejection of the jury's verdict. As illustrated by the statement defendant attributes to the trial judge and upon which he himself relies, the trial judge stated merely that he did not believe defendant's testimony—something he was in a unique position to judge and which he could consider in imposing sentence. What's more, defendant's most favorable interpretation of the trial judge's remarks—that he would have found defendant guilty of attempted murder—does not mean that the judge rejected the jury's verdict or that he was prejudiced against defendant.

We have before us a record that provides adequate information about the post-trial and sentencing procedures. From that record, we are able to determine whether the judge's rulings during the post-trial and sentencing proceedings indicate any prejudice against defendant. Our review reveals no basis for concluding that the judge was prejudiced during those proceedings or, for that matter, during any other part of the trial. On the contrary, the record reflects that the judge presided fairly over all the proceedings and accorded defendant all of his due process rights.

Defendant received 25 years' imprisonment for his Class X offense, well within the statutory range. He received that sentence for shooting a man who was hospitalized for six months, had five surgical procedures, will never have any feeling in his legs, gets around his apartment in a wheelchair, requires the use of braces and crutches to "walk," and uses a catheter every six hours for his urinary functions. The record demonstrates no basis for finding that the trial judge was prejudiced or, more relevant to this appeal, for holding that he was required to refrain from ruling and refer this case to another judge.

## II

Defendant also asserts that the circuit court committed reversible error by disallowing evidence of the firebombings and shootings of defendant and his family. He argues that the excluded evidence proved both that Vargas was more likely to have been the aggressor because he was prone to violence, and that defendant had reason to believe that he needed to use deadly force to fight off Vargas' last attack.

■ When a criminal defendant alleges that he acted in self-defense, he has the right to present evidence showing the victim's

propensity for violence to support his claim that the victim was the aggressor. (*People v. Keefe* (1991), 209 Ill. App. 3d 744, 754-56, 567 N.E.2d 1052, 1058.) Defendant here presented evidence that Vargas was a member of the Spanish Cobras street gang, and he sought to present evidence that the Cobras firebombed his home and shot at him in the past. This was not evidence that *Vargas* acted violently in the past, since defendant could not show that Vargas was with the persons who firebombed his home or shot at him. The proposed evidence would show only that some persons with whom Vargas associated acted violently. Such association does not support an inference that Vargas had violent tendencies. (See *People v. Rivera* (1989), 187 Ill. App. 3d 813, 543 N.E.2d 840.) Therefore, the circuit court did not abuse its discretion by excluding the proffered testimony on this basis.

A defendant who raises the issue of self-defense also has the right to present evidence concerning his state of mind to show that he reasonably believed that to protect himself he needed to use the kind of force he used. (*Keefe*, 209 Ill. App. 3d at 751, 567 N.E.2d at 1056; *People v. Eshaya* (1986), 144 Ill. App. 3d 757, 765, 494 N.E.2d 772, 778.) Here, defendant presented evidence that Vargas was a member of the Spanish Cobras, or at least, because defendant first saw Vargas when he was with a group, of which some shouted the gang slogan "Cobra love," defendant reasonably believed Vargas to be a member of the gang. The evidence of prior violent acts by other Cobras against defendant and his family is relevant, as it helps defendant establish "the extent of his apparent danger, and the motive influencing him" (*People v. Robinson* (1987), 163 Ill. App. 3d 754, 773, 516 N.E.2d 1292, 1306, *appeal denied* (1988), 119 Ill. 2d 570, 522 N.E.2d 1253) when he shot Vargas, by showing that defendant reasonably believed Cobras were willing to use deadly force against him.

The fact that defendant could not show that Vargas participated in the other incidents does not render evidence of those incidents irrelevant if they affected his reasonable beliefs. In *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 423 N.E.2d 1185, the defendant testified that he heard strange noises outside his home at 5 a.m., and he took a loaded pistol when he went to investigate. He saw the victim and another man in the vestibule; when he opened the door, the victim made a sudden move and the gun went off. A jury found the defendant guilty of involuntary manslaughter and armed violence. The appellate court reversed the convictions, holding that the circuit court committed reversible error when it precluded the defendant from testifying that "for a period of 2 years prior to this incident there had been frequent break-ins, burglaries and arsons in the building

and in the vestibule." (*Suerth*, 97 Ill. App. 3d at 1012, 423 N.E.2d at 1192.) The evidence should have been admitted to prove that the defendant acted reasonably in arming himself, even though the defendant could not connect the victim to any of the earlier crimes.

The State cites *People v. Ruel* (1970), 120 Ill. App. 2d 374, 256 N.E.2d 672, to the contrary. In that case the defendant sought to present evidence of prior altercations with police officers in order to show that he had acted in self-defense when he shot a police officer. The appellate court held that the circuit court properly excluded the evidence because the police officer the defendant shot was not involved in the prior altercations. This holding appears to have no bearing on the present case, unless it is assumed that the police are prone to seek violent revenge against certain individuals in the same manner as do street gangs. The holding of *Ruel* is simply that an altercation with one police officer cannot lead one reasonably to believe that all police are likely to use deadly force against him. By its nature, a street gang cannot be seen by this court as parallel to the police department; defendant's argument that after some members of the Spanish Cobras used deadly force against him, he reasonably feared that all members of that gang would use similar force is not refuted by *Ruel*.

This court recently held in *People v. Montes* (1994), 263 Ill. App. 3d 680, that evidence that the defendant was injured in a street fight four years before, where the victim was not connected to the fight in any way, was erroneously excluded by the circuit court. The defendant asserted that the evidence was relevant to his state of mind and the issue of self-defense. The court concluded that the "defendant was prejudiced by the cumulative restrictions placed by the trial court on his presentation of his defense." *Montes*, 263 Ill. App. 3d at 691.

■ Nevertheless, even if exclusion of the evidence of prior acts against defendant was error, it is not necessarily grounds for reversing his conviction. "Where a claim of self-defense rests upon some reasonable basis, exclusion of state-of-mind testimony by a defendant will ordinarily constitute reversible error unless sufficient evidence of his intent is admitted at a subsequent stage of trial" (*People v. Christen* (1980), 82 Ill. App. 3d 192, 194, 402 N.E.2d 373, 375); however, where the court admits substantial evidence concerning the reasons for the defendant's fear, the exclusion of evidence which would further elucidate those reasons may be harmless error. (*People v. Parker* (1990), 194 Ill. App. 3d 1048, 1058-59, 551 N.E.2d 1012, 1019, *appeal denied* (1990), 132 Ill. 2d 552, 555 N.E.2d 383.) This court will not reverse a conviction based upon the exclusion of admis-

sible evidence unless the evidence could reasonably have affected the verdict. *People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 60, 452 N.E.2d 32, 35.

Here, the court permitted defendant to present evidence that Vargas was a member of the Spanish Cobras and that Vargas had threatened defendant. The evidence of firebombings would further show why defendant believed that Vargas might use deadly force, but it would add little to the evidence the jury heard. (See *People v. Crisp* (1992), 242 Ill. App. 3d 652, 662, 609 N.E.2d 740, 746, *appeal denied* (1993), 151 Ill. 2d 569, 616 N.E.2d 340.) Police officer Rodriguez testified that the Cobras and defendant's gang, the Freaks, were rivals. Another prosecution witness, Quinones, said members of the Cobras had killed several members of his gang. Aside from the general proposition that gang members may resort to violence, the proposed evidence would have shown only that defendant had reason to seek revenge against the Cobras, which would give him a motive other than self-defense for the shooting. In light of all the evidence presented to the jury, this court concludes that exclusion of the evidence of firebombings and shootings by gang members other than the victim did not affect the verdicts against defendant and are therefore harmless error.

## III

Defendant concedes that the Illinois Supreme Court recently held in *People v. Allen* (1992), 153 Ill. 2d 145, 606 N.E.2d 1149, that a conviction for armed violence may be predicated on battery aggravated by great bodily harm even if the defendant committed the battery under an actual but unreasonable belief in the need for self-defense. He argues that the instructions in this case, however, permitted the jury to convict him of armed violence predicated on battery aggravated by the use of a deadly weapon, which would be an improper double enhancement of a misdemeanor battery to a Class X felony conviction based solely on the use of a gun. See *People v. Haron* (1981), 85 Ill. 2d 261, 278, 422 N.E.2d 627, 634.

In *People v. Hines* (1993), 257 Ill. App. 3d 238, 629 N.E.2d 540, the circuit court used pattern jury instructions similar to the instructions used here for defining armed violence based on aggravated battery. The appellate court reversed the defendant's conviction for armed violence due to the inadequate instructions.

> "[T]he armed violence instructions given to the jury here referred simply to 'aggravated battery,' with no qualifying language as the underlying felony. However, when the State, as here, in addition to trying a defendant for armed violence based

on aggravated battery tries a defendant under two different theories of aggravated battery, one of which is aggravated battery based upon the use of a deadly weapon, the jury may be misled by instructions that do not specifically restrain the jury from considering deadly weapon aggravated battery as the predicate offense for armed violence. Thus, we hold that in these cases, the armed violence instructions must be composed in such a way as to ensure that the jury does not consider that form of aggravated battery as the predicate felony for the armed violence charge. To permit otherwise would be to circumvent the rule established in *People v. Haron* [(1981), 85 Ill. 2d 261, 422 N.E.2d 627]. Here, the jurors were given both aggravated battery instructions, one of which was aggravated battery based upon the use of a deadly weapon. The armed violence instruction, however, did not direct the jury to consider only the aggravated battery based upon great bodily harm during its deliberations. This was error, because, under the circumstances present here, we cannot say that the jury did not convict the defendant of both aggravated battery based on the use of a dangerous weapon as well as of armed violence hinging on that very same predicate." *Hines*, 257 Ill. App. 3d at 244-45, 629 N.E.2d at 544.

■ Under this reasoning, the issues instruction here should have clearly limited the jury's consideration of armed violence to the felony of aggravated battery based on great bodily harm or permanent disability. The *Hines* case is distinct from this case, however, in one crucial respect: the jury in *Hines*, following the judge's instructions, signed none of the verdict forms regarding aggravated battery because it found defendant guilty of armed violence. Here, the jury signed three separate forms concerning aggravated battery. It found defendant not guilty of battery aggravated by permanent disability, but guilty of battery aggravated by great bodily harm and by use of a deadly weapon. The jury therefore explicitly found that defendant committed aggravated battery based upon great bodily harm, and when he did so he used a deadly weapon. These findings establish that the jury found facts forming a proper basis for the armed violence conviction. (See *People v. Renehan* (1992), 226 Ill. App. 3d 453, 462-63, 589 N.E.2d 866, 974, *appeal denied* (1993), 148 Ill. 2d 650, 578 N.E.2d 1193.) The conviction for armed violence therefore does not constitute an impermissible double enhancement.

## IV

■ Defendant next asserts that his sentence must be vacated because the judge based the sentence in part on his belief that defendant was guilty of attempted murder. While a circuit court cannot

properly base a sentence on charges of which the defendant has been acquitted (see *People v. Grigsby* (1966), 75 Ill. App. 2d 184, 192-93, 220 N.E.2d 498, 503), as discussed above there is no evidence to support this allegation in the record other than the judge's statement that he would have convicted a defendant who had already been convicted of a Class X felony of another felony punishable as a Class X felony. Further, the trial judge stated on the record that he had no prejudice against defendant before sentencing him to imprisonment for 25 years.

Defendant observes that his sentence of 25 years, near the maximum term of 30 years for a Class X felony, is high in view of his lack of a prior record and the State's offer to accept a guilty plea and recommend a sentence of 12 to 15 years. He concedes, however, that these considerations alone do not present adequate grounds for reversal of the sentence.

Defendant is correct in his concession. A circuit court's sentencing decisions are entitled to great deference and weight. (*People v. Streit* (1991), 142 Ill. 2d 13, 18, 566 N.E.2d 1351, 1353.) It is a well-settled principle of law that absent an abuse of discretion by the circuit court, a sentence will not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) A reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently. (*Streit*, 142 Ill. 2d at 19, 566 N.E.2d at 1353.) A mere disparity between a sentence offered during plea bargaining and the ultimate sentence imposed does not, in itself, warrant reduction on appeal of a term of imprisonment. *People v. Franklin* (1979), 80 Ill. App. 3d 128, 133, 398 N.E.2d 1071, 1075.

Additionally, the mitigating evidence of defendant's lack of a prior criminal record was before the sentencing court. When such evidence is before the court, it is presumed to have considered the evidence absent some indication, other than the severity of the sentence itself, to the contrary. *People v. Lopez* (1992), 223 Ill. App. 3d 520, 523, 585 N.E.2d 622, 624.

Based upon these considerations, there is no reason to reverse defendant's sentence.

## V

■ Defendant finally asserts that this court should vacate his two convictions for aggravated battery. Although there is no final judgment in a criminal case until the imposition of sentence, and in the absence of a final judgment an appeal cannot be entertained (*People v. Flores* (1989), 128 Ill. 2d 66, 95, 538 N.E.2d 481, 492, *cert. denied*

(1990), 497 U.S. 1031, 111 L. Ed. 2d 799, 110 S. Ct. 3291; *People v. Caballero* (1984), 102 Ill. 2d 23, 51, 464 N.E.2d 223, 236-37, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362), in *People v. Lilly* (1974), 56 Ill. 2d 493, 495-96, 309 N.E.2d 1, 2, our supreme court vacated the unsentenced conviction entered in that case. Following *Lilly*, many cases have vacated unsentenced convictions, even though the prejudice found in *Lilly* was not found in most of the subsequent cases. As in *People v. Burrage* (1994), 269 Ill. App. 3d 67, we agree with defendant's contention and vacate his unsentenced convictions for aggravated battery.

For all of the foregoing reasons, the judgment for armed violence is affirmed, and the unsentenced convictions for aggravated battery are vacated.

Affirmed in part, vacated in part.

HARTMAN, J., concurs.

JUSTICE McCORMICK, dissenting:

Section 114—5(d) of the Code of Criminal Procedure does not permit a judge charged with prejudice to determine even the legal adequacy of the allegations in a motion for substitution of judge supported by affidavit. The trial court here had no authority to make the determination it made on the merits of the motion for substitution, and the failure to transfer the motion to another judge renders all of the trial court's subsequent actions on the post-trial motions void. (*Brim*, 241 Ill. App. 3d at 249.) Therefore the issues raised in those motions are not properly before this court. I would remand for transfer of the motion for substitution to another judge without addressing the other issues raised in the briefs.

The majority cites several United States Supreme Court cases in support of its holding that the allegations here are legally inadequate. (*Liteky*, 510 U.S. 540, 127 L. Ed. 2d 474, 114 S. Ct. 1147; *Grinnell Corp.*, 384 U.S. 563, 16 L. Ed. 2d 778, 86 S. Ct. 1698.) In those cases the court interprets the Federal judicial disqualification statute, which provides:

> "Whenever a party *** files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144 (1988).

The inclusion of the requirement of a sufficient affidavit is a crucial distinction between this statute and the Illinois statute, because under the Federal statute:

"Disqualification results only from the filing of a timely and sufficient affidavit. [Citations.]

It is the duty of the judge against whom a section 144 affidavit is filed to pass upon the legal sufficiency of the facts alleged." *United States v. Townsend* (3d Cir. 1973), 478 F.2d 1072, 1073. The majority effectively reads into the Illinois statute language present in the Federal statute but not found in the Illinois statute. When the legislature acts within its constitutional authority, the courts' "sole function is to determine and *** give effect to the intention of the lawmaking body. We will not and cannot inject provisions not found in a statute, however desirable or beneficial they may be." (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 504, 217 N.E.2d 73.) The Illinois statute requires the judge charged with prejudice to transfer for hearing any motion for substitution supported by affidavit, so that the other judge must decide the sufficiency of the allegations as well as the factual accuracy of those allegations.

The trial court, unlike the majority, did not decide that the allegations of the motion for substitution were legally insufficient; instead, the judge heard the motion and denied it because "there was no, absolutely n[o], prejudice or bias ***. Everyone who comes into this courtroom is presumed to be innocent unless he is proven guilty." The statute requires a judge other than the judge accused of bias to make such a factual determination.

Even if the statute permitted the trial judge to determine the legal sufficiency of the allegations, the majority has not shown that the motion is insufficient. The majority addresses only 2 of defendant's 25 allegations of incidents showing prejudice. The majority takes the two instances out of the context of the entire trial and then invokes the principle that judicial rulings do not generally show disqualifying bias. Federal courts have established "[a]n exception to the general rule *** where 'such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party.' " (*United States v. Meester* (11th Cir. 1985), 762 F.2d 867, 885, quoting *Davis v. Board of School Commissioners* (5th Cir. 1975), 517 F.2d 1044, 1051.) Defendant alleges just such a course of conduct.

The majority asserts without citation to authority that the trial judge properly required defense counsel to make offers of proof before putting his witnesses on the stand. The testimony defendant sought to adduce concerning prior occurrences was admissible, as shown by the majority's discussion of *Suerth* (97 Ill. App. 3d at 1012) and *Montes* (263 Ill. App. 3d at 691), yet the majority finds the requirement of offers of proof justified by the incorrect ruling excluding relevant evidence. Moreover, the trial court's requirement of offers of proof was

not a ruling on a motion: the judge *sua sponte* imposed the requirement without any motion from the prosecution.

The procedure the judge imposed forced defendant to reveal to the State the specific details of his trial strategy without causing the State to reveal any part of its strategy. On the basis of the improper exclusion of evidence of other occurrences, the trial judge, according to defendant, then took control of defendant's presentation of his case by specifying the order in which he could call his witnesses. The majority does not address the consequences of the judge's improper requirement of offers of proof based on its erroneous exclusion of relevant evidence.

The majority then finds inadequate the allegation that the judge said he would have convicted defendant of attempted first degree murder. The majority asserts that the statement showed only that the trial court deemed defendant to have committed perjury. The jury accepted defendant's evidence that he was not guilty of attempted first degree murder. "[T]he resolution of the credibility of the various witnesses, including that of defendant ***, was for the jury." (*People v. Iverson* (1973), 9 Ill. App. 3d 706, 708, 292 N.E.2d 908.) Where the jury has found a defendant credible, neither the trial court nor this court should supplant that finding. The trial court could not properly consider as perjury testimony the jury apparently believed to be true.

The majority invokes the presumption that the court relies on only proper considerations in sentencing. This presumption may be overcome by an express indication that the court based its sentence on improper considerations. (*Phillips*, 127 Ill. 2d at 537.) The record supplies just such an express indication here. At the hearing on defendant's post-sentencing motion, the judge interrupted defense counsel's argument concerning the severity of the sentence to ask: "You mean one fellow is entitled to an attempt to murder *** because he has no record?" The judge did not respond to counsel's reminder that the jury found him not guilty on that charge. The trial judge's remarks cited in the motion showed his inclination to sentence for attempted murder, and the comments after sentencing indicated that, despite the jury's acquittal of defendant on that charge, the court did, in fact, sentence defendant for attempted murder.

Because the Illinois legislature directs a judge accused of bias to transfer the motion for hearing before another judge, I would find that the judge's appraisal of the merits of the motion was error which rendered all subsequent rulings void. Even if the judge could appraise the legal sufficiency of the motion and its supporting affidavit, the allegations here are "not frivolous or fanciful, but substantial"

(*Berger v. United States* (1921), 255 U.S. 22, 34, 65 L. Ed. 481, 486, 41 S. Ct. 230, 233), and sufficient to require a hearing before a judge not named in the motion. We have no valid decision of the trial court to review on any of the issues considered by the majority. Accordingly, I would vacate the judgment and remand for hearing before a different judge on the motion for substitution.