THIRD DIVISION

November 13, 2002

No. 1-00-4116

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

          ) Circuit Court of 

Plaintiff-Appellee,
 ) Cook County.

) 

v. ) 

) 

NATHAN ANTOINE, ) Honorable 

) Thomas E. Nowinski,

Defendant-Appellant. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

After 72-year-old Rose B. pulled her car to the curb because of a flat tire, Nathan Antoine offered assistance.  Unable to fix the problem, he offered her a ride to Jewel so she could call a friend.  

After Rose B. accepted, Antoine drove instead to an alley and tried to force her to perform oral sex on him.  When she resisted, Antoine then attempted to force anal sex on her.  When this attempt failed, he again resorted to forcing her to perform oral sex on him, this time successfully.   

After a jury trial, Antoine was convicted of two counts of aggravated criminal sexual assault.  At the sentencing hearing, the State introduced evidence that Antoine previously had been convicted for rape, had sexually assaulted other women, and attempted to have Rose B. killed while he was in jail.  Based on his prior convictions and the nature of the present convictions, the court sentenced Antoine to 60 years imprisonment on each of the two convictions, sentences to be served consecutively.  See 730 ILCS 5/5-5-3.2(b)(1) (West 1996); 730 ILCS 5/5-8-4 (West 1996).

On appeal, Antoine contends: (1) he is entitled to a new trial because the trial court did not transfer his recusal motion and motion for substitution of judge for cause to another judge for ruling; (2) the trial court erred in refusing to hold a 
Franks
 hearing on the veracity of the search warrant affidavit; (3) the trial court erred in denying Antoine's motion for a continuance to secure the presence of his newly-hired attorney; (4) the trial court did not properly consider his allegations of ineffective assistance of counsel prior to sentencing; and (5) 730 ILCS 5/5-5-3.2(b)(1) and 730 ILCS 5/5-8-4(a) violate the United States Supreme Court holding in 
Apprendi v. New Jersey
, 530 U.S. 466, 476 (2000)
. 

We affirm Antoine’s convictions and sentence. 

FACTS

At trial, the jury heard the following evidence:

On March 15, 1997, around midnight, Rose B. stopped at a Jewel on her way home from work.  When she returned to her car, she noticed a dark car parked nearby with a man sitting in it.  After placing her groceries in her car, she drove away.  

While on the road, she realized she had a flat tire.  She pulled over to check the tire and opened her trunk.  A man she later identified as Antoine pulled alongside her car and offered assistance.  A special lug wrench was needed to change her tire, which was not in her trunk.  Antoine then offered her a ride back to the Jewel so she could call a friend; she accepted.

Antoine drove to an alley and stopped the car.  He unzipped his pants, forced her head down, and said “suck it or I’ll cut you.”  She begged Antoine not to force her and told him she was 72 years old.  She then noticed she was cut over her right eye and was bleeding.  She wiped the blood onto Antoine’s pants.  

After the unsuccessful attempt at anal sex, Antoine again pushed Rose B.'s head into his lap and ordered her to perform oral sex on him.  She did, and he quickly ejaculated.  Antoine then drove down the alley ordering her to keep her head down.  After about 15 minutes, he stopped his car and told her to get out.  He threatened to shoot her if she looked at him.  He did not allow her to take her purse.  After she got out of the car, Antoine drove away.

Rose B. went to a nearby home.  The homeowner called the police, and Officer Brian Duffy responded to the call.  The paramedics arrived and took her to the hospital.

She was treated with a sex assault kit.  The treating nurse collected her pantyhose and took oral and rectal swabs. 

While at the hospital, Rose B. told Duffy what happened.  Her car was recovered, and Evidence Technician David Winston searched for latent prints.  He located fingerprints on various parts of the car.  He photographed and lifted the prints.  He also found her flat tire had a puncture-hole on the side.

Officer Stanley McCadlow, an expert in latent print identification and comparisons, made a tentative, but not complete, identification that the latent impression belonged to Antoine.  Detective William Villanova obtained an arrest warrant and a search warrant for Antoine's home.  

On March 19, 1997, police officers arrested Antoine.  He was placed in a lineup.  Rose B. viewed the lineup and immediately identified Antoine as the perpetrator.  

Antoine’s car was confiscated and taken to the police station.  The front seats were removed and sent, along with the sex assault kit, to the Illinois State Police Crime Lab in Joliet.  The pantyhose and oral swab tested positive for semen.  The front passenger seat of Antoine’s car tested positive for the presence of blood.  Blood samples were taken from Antoine and Rose B.

The semen stains from the oral swab could not be tested because of insufficient material.  But the semen stains from Rose B.'s pantyhose were tested.  The DNA profile from these stains matched Antoine’s DNA profile.  The blood stains taken from the seat of Antoine's car were tested and matched Rose B.’s blood.

Forensic Scientist Thomas Skinner compared nine suitable latent prints taken from Rose B.'s car.  He determined all of the lifts were prints made by Antoine.  

Antoine was found guilty on two counts of aggravated criminal sexual assault.

At the sentencing hearing, the trial court heard the following evidence:

On September 28, 1982, Janette L. was shopping.  When she returned to her car, she noticed she had a flat tire.  Antoine offered to help her change her tire.  After changing the tire, he asked her for a ride to a bus stop.  When she arrived, Antoine told her he had a knife and to keep driving.

When they stopped, Antoine ordered her to perform oral sex.  She resisted.  He then struck her, threatened her, and forced anal sex on her.  She felt something around her neck and then passed out.  When she awoke, Antoine and her car were gone.

Antoine was arrested.  Janette L. identified him in a lineup.  He then confessed to the crime and pled guilty to the charge.

On November 4, 1982, Monica G. pulled into her parking lot after driving home.  When she leaned over to get things out of the back seat of the car, she was struck in the head and shoved in the car.  Her attacker ordered her not to turn around.  He struck her several times and forced vaginal sex “from the back.”  He later forced her to perform oral sex on him and then fled.

A club was found in her car, and prints from the club belonged to Antoine.  He confessed to the attack and pled guilty to the charge. 

In early 1996, Urbana police investigated Antoine after a woman complained he was stalking her.  When Antoine was stopped in connection with the case, he consented to a search of his car.  Police found a nylon mask, rubber gloves, a large hunting knife, and a box of condoms.  He was subsequently charged with stalking and disorderly conduct.

In January 1997, Antoine approached a 13-year old victim while she was on her way home from school and forced her to the ground near an alley.  He tried to kiss her, straddled her, unzipped his pants, forced his penis on her lips, and instructed her to play with it.  When she resisted, he threatened to kill her if she told anyone what happened.  In March 1997, the victim identified Antoine as the man who sexually assaulted her. 

In March or early April of 1997, Antoine attempted to arrange a “hit” on Rose B.  Antoine told Michael Taylor, who was in the jail cell next to Antoine’s, he wanted to have “two bullets in her head” because she was “going to bury him.”  Taylor was concerned for Rose B. and pretended to go along with Antoine’s plan.  

Antoine gave Taylor details about Rose B.'s next court appearance and instructions on how he wanted the matter handled.  The killer was to follow her to her home or work in order to kill her.  Antoine also drew a map of an area where Antoine believed she lived.

As instructed by Taylor, Antoine had his mother send money orders to an organization as payment for the hit.  The money orders were recovered, as were the map and the notes between Antoine and Taylor.  Taylor received no consideration for providing the information against Antoine.

The trial court sentenced Antoine to two 60-year sentences to be served consecutively.

DECISION

SUBSTITUTION OF JUDGE FOR CAUSE

Antoine contends the trial court erred in failing to transfer his motion for recusal and motion for substitution of judge to another judge for ruling. 

The case was assigned to Judge Nowinski on June 19, 1997.  When Antoine’s counsel, Donna Foley, received the State’s discovery, she learned Judge Nowinski had signed the search warrant.

On September 10, 1998, she filed a motion titled “Defendant’s Motion Requesting the Court’s Recusal from the Case in Chief or in the Alternative from Defendant’s Substantive Pretrial Motions Based on the Court’s Prior Participation in the Search Warrant Procedure.” 

In the motion, she contended Judge Nowinski should recuse himself to avoid any appearance of impropriety or conflict because he heard probable cause evidence and issued the warrants.  The motion stated the encounter between Judge Nowinski and Villanova regarding the warrants was a “secret session,” or 
ex
 
parte
 proceeding, that required recusal.  Her concern was that Judge Nowinski may have learned of other information not contained in the affidavit supporting the warrants regarding probable cause and identification.

Nowhere in the motion did she invoke or otherwise refer to 725 ILCS 5/114-5(d) (West 1998), the statute governing substitution of judge for cause.  The motion was not verified, nor were any affidavits attached to the motion.

On November 17, 1998, Judge Nowinski heard Foley’s arguments on the motion.  At no time during her argument did she argue that Judge Nowinski should transfer the motion to another judge for ruling.  Her argument was merely that Judge Nowinski should recuse himself because of his participation in the 
ex
 
parte
 warrant proceedings.  Judge Nowinski said it was not uncommon for judges in Cook County to hear motions on search warrants they signed.  Although he felt he did not need to recuse himself at all, “as an accommodation to” Antoine, Judge Nowinski said he would recuse himself from ruling on the “four corners” motion --  the motion to suppress for lack of probable cause in the complaint for the search warrant. 

On January 27, 1999, Antoine filed a 
pro
 
se
 motion for substitution of judge.  Antoine stated he was bringing the motion pursuant to 725 ILCS 5/114-5.  While Antoine did not specify under what subsection he was filing the motion, his motion contained a reference to substitution as of right and allegations of prejudice.  The motion was notarized.  

Antoine’s motion appears to have been brought under both subsection (a), substitution of right, and subsection (d), substitution for cause.  On appeal, Antoine contends this motion was one for cause and does not contend it was a motion for substitution of judge as of right.
(footnote: 1) 

On February 2, 1999, Judge Nowinski addressed Antoine’s motion for substitution of judge.  Antoine told the court that although he understood he could not “go 
pro
 
se
” and be represented by counsel, he filed this 
pro
 
se
 motion because Foley had refused to do so.  The reason Foley gave Antoine for refusing to file the motion was that she thought Antoine would not “win on the motion[].”

The court told Antoine, “If you are filing that motion, we will set it for a hearing.  After some further discussion, Judge Nowinski said:

“Mr. Antoine, you cannot file motions on your own if you are being represented by an attorney.  What I will let you do is I will let you consider what your attorney wants to do and what you want to do and then I will address those issues that you have filed and see whether or not you want to proceed on them on your own and without getting any other assistance or if Ms. Foley -- or what Ms. Foley decides to do on the next date.”

Neither Antoine nor Foley made any objection.  From the record it appears neither Antoine or Foley ever filed the motion for substitution of judge again.
(footnote: 2)  Additionally, the court’s treatment of Antoine’s 
pro
 
se
 motion was not raised in Antoine’s post-trial motion.

On appeal, Antoine contends his motion for recusal triggered the trial court’s statutory duties under section 114-5(d).  In other words, he urges us to treat his motion for recusal as a motion for substitution of judge for cause.  He then contends the trial court erred by not transferring the matter to another judge for ruling as required under section 114-5(d).

In the alternative, Antoine contends the statutory obligations of 114-5(d) applied once he filed his 
pro
 
se
 motion for substitution of judge.  Relying on 
People v. Brim
, 241 Ill. App. 3d 245, 608 N.E.2d 958 (1993), Antoine contends that once he filed his motion for substitution of judge, Judge Nowinski lost all power and authority over the case, and all his subsequent actions were void.  Antoine says he is entitled to a new trial
 because Judge Nowinski failed to transfer the motion to another judge for ruling.

We turn first to Antoine’s contention that his motion for recusal triggered a duty to transfer the motion to another judge under section 114-5(d).  Section 114-5(d) provides:

“(d) *** the State or any defendant may move at any time for substitution of judge for cause, 
supported by affidavit
.  Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion; provided, however, that the judge named in the motion need not testify, but may submit an affidavit if the judge wishes.  If the motion is allowed, the case shall be assigned to a judge not named in the motion.  If the motion is denied the case shall be assigned back to the judge named in the motion."  (Emphasis added.)  725 ILCS 5/114-5(d).

Nothing in the title or body of Antoine’s motion for recusal suggested Antoine was bringing the motion under section 114-5(d).  The motion failed to meet the affidavit requirement of the statute.  And Antoine’s counsel never mentioned section 114-5(d) or contended Judge Nowinski should transfer the motion to another judge for ruling.  In addition, the motion suggested alternative relief -- that the trial judge simply not decide the pre-trial matters, hardly a demand for a different judge.  
Thus, we refuse to treat Antoine’s motion for recusal as a motion for substitution of judge under section 114-5(d).  
Cf.
 
Schaller v. Weier
, 319 Ill. App. 3d 172, 744 N.E.2d 376 (2001) (court rejected appellant's contention that it should treat her motion for recusal as a motion for substitution of judge as of right).  

A motion for recusal does not trigger a duty on the part of the trial judge to transfer the motion to another judge for determination.  On the contrary, the trial judge is in the best position to determine whether he or she is prejudiced against the defendant when presented with a motion for recusal.  
People v. Kliner
, 185 Ill. 2d 81, 169, 705 N.E.2d 850 (1998).  We conclude Judge Nowinski did not err by failing to transfer the motion to another judge. 

Turning to Antoine's contentions regarding his 
pro
 
se
 motion for substitution of judge, we conclude Antoine has waived our review of his contentions for a number of reasons:

First, Antoine did not object to the fact that Judge Nowinski did not immediately transfer the motion to another judge for consideration.  
People v. Jimenez
, 191 Ill. App. 3d 13, 28, 547 N.E.2d 616 (1989) (the defendant waived review of his contention that the trial judge erred in not transferring his section 114-5(d) motion to another judge where the defendant failed to object to the same trial judge ruling on the motion); see also 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988) (in order to properly preserve an issue for appellate review, a defendant must 
both
 make a timely objection 
and
 raise the issue in his post-trial motion).

Second, Antoine did not properly bring the motion for substitution of judge before the trial court.  After Judge Nowinski told Antoine he would not allow Antoine to file his 
pro
 
se
 motion at that time because he had counsel, but that he might consider the issue if Antoine insisted, Antoine did not later file another motion as Judge Nowinski instructed him to do.  His failure to do so indicates Antoine and his counsel decided to abandon the matter.

Third, Antoine did not raise the issue in his post-trial motion.  
People v. Williams
, 272 Ill. App. 3d 868, 874, 651 N.E.2d 532 (1995) (the defendant waived review of his appeal from the trial court's ruling on a section 114-5(d) motion where he failed to raise the issue in his post-trial motion); see also 
Enoch
, 122 Ill. 2d at 186. 

If we were to reach the merits of this issue, we would disagree with Antoine.  Once a motion for substitution of judge is 
properly
 brought under section 114-5(d), a judge loses all power and authority over the cause.  
People v. Bell
, 276 Ill. App. 3d 939, 947, 658 N.E.2d 1372 (1995).  

However, the right to a hearing before a judge not named in the motion is not absolute.  See, 
e.g.
, 
People v. Johnson
, 159 Ill. 2d 97, 123, 636 N.E.2d 485 (1994) (the defendant was not entitled to a hearing before a different judge where he did not make the motion at the earliest possible moment and took actions inconsistent with his claims of prejudice).  Illinois courts have recognized that in certain instances, a trial court need not transfer a motion for substitution of judge for cause to another judge.  
Bell
, 276 Ill. App. 3d at 947.

In 
People v. Damnitz
, 269 Ill. App. 3d 51, 645 N.E.2d 465 (1994), we held the trial court was not required to refrain from ruling on the motion and refer the case to another judge where the defendant failed to establish a threshold basis for his substitution motion.  
Damnitz
, 269 Ill. App. 3d at 55-58.  The defendant filed a motion for substitution of judge contending the trial judge was prejudiced.  The defendant based his motion on numerous rulings the judge made against the defendant and the judge's comment after the jury returned a verdict in which the judge said he would have convicted defendant of first-degree murder.  The trial court judge denied the defendant's motion without transferring the matter to another judge.  We said:

"*** even 
incorrect
 evidentiary rulings of a trial judge, without more, cannot justify the procedure defendant insists upon here. *** Given the adequate opportunity for review of evidentiary rulings provided both by post-trial proceedings and by appellate scrutiny, such a radical departure from current practice is unjustified and ill-advised."  
Damnitz
, 269 Ill. App. 3d at 55-56 (citing 
Liteky v. United States
,  510 U.S. 540 (1994)).

With respect to the judge's comment that he would have found the defendant guilty of first-degree murder, we said " 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'"  
Damnitz
, 269 Ill. App. 3d at 57 (quoting 
Liteky
, 510 U.S. at 555).   We reviewed the record and found no evidence the judge was prejudiced at any time during the proceedings before him.  
Damnitz
, 269 Ill. App. 3d at 57.  

In 
People v. Marshall
, 165 Ill. App. 3d 968, 521 N.E.2d 538 (1988), we held the trial court did not err in failing to transfer the motion for substitution of judge for cause to another judge.  In that case, the defendant based his motion on comments by the trial judge evidencing frustration with the age of the case and the defendant's repeated requests for continuances.  In defendant's motion, which was verified, he included only a cursory allegation of prejudice and failed to attach any affidavits in support.  We concluded the defendant failed to meet his burden of showing prejudice because his motion lacked specificity.  
Marshall
, 165 Ill. App. 3d at 975.  

Although, in the context of a section 114-5(d) motion, we have found no Illinois cases determining whether presiding over 
search warrant proceedings or issuing a search warrant triggers the transfer provision of section 114-5(d), we have said that a judge’s previous ruling adverse to defendant does not alone disqualify that judge or require him to recuse himself from further proceedings.  
People v. Moore
, 199 Ill. App. 3d 747, 768, 557 N.E.2d 537 (1990).  
The United States Supreme Court has held that under a federal statute, which requires a judge to disqualify himself in any proceeding in which his impartiality might reasonably be questioned, the trial judge was not required to recuse himself based on judicial rulings, among other things.  
Liteky
, 510 U.S. at 556.  In so holding, the Court said “judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.” 
Liteky
, 510 U.S. at 555.

Additionally, a number of other jurisdictions have held a judge is not required to recuse himself from a case in which he issued the search warrant.  See, 
e.g.
, 
Wallace v. Mississippi
, 741 So. 2d 938, 942 (Miss. App. 1999) (trial court judge did not abuse his discretion when he refused to recuse himself from the case where he issued the warrants in the case, recused himself from the suppression hearing, and testified at the hearing he did not remember the facts of the case, and where no prejudice or bias was alleged or discovered from the review of the record); 
Bussell v. Kentucky
, 882 S.W.2d 111, 112 (Ky. 1994) (allegation in motion that trial judge should recuse himself because he ruled on an 
ex
 
parte
 motion for a search warrant was without merit because recusal is only appropriate when the information is obtained from an extrajudicial source); 
New York v. McCann
, 650 N.E.2d 853, 854 (N.Y. S. Ct. App. Div. 1995) (trial judge not required to recuse himself from determining validity of search warrant he issued).  The United States Supreme Court has said:

"Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it.  Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial.  Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilty or innocence."  
Withrow v. Larkin
, 421 U.S. 35, 56 (1975).  

In the present case, Antoine’s motion for substitution of judge did not make a threshold showing of prejudice.  Antoine’s allegations of prejudice are based solely on the fact that Judge Nowinski issued the warrants in this case.  That Judge Nowinski presided over the 
warrant proceedings and issued the search warrant is not sufficient alone to establish prejudice.  And Antoine does not direct us to any evidence in the record that Judge Nowinski heard information during the search warrant application beyond what was in the affidavit or that the judge intended to consider information from the warrant proceedings in his future rulings.  

Additionally, Judge Nowinski recused himself from the suppression hearing based on the warrant.  Although we are puzzled by Judge Nowinski's decision not to send Antoine's motion challenging the veracity of the affidavit for the search warrant to another judge as well, we hold his failure to do so was not error. 

Other than contending Judge Nowinski's participation in the warrant proceedings resulted in prejudice, Antoine provides no specific allegations of prejudice or hostility.  Instead, the remainder of his motion contains little more than bald, conclusory allegations.  For example, the motion states: "the court is hostile and prejudiced against defendant."  Yet Antoine provided no examples of this "hostility" or "prejudice."  

Antoine likens his case to 
People v. Brim
.  In that case, the defendant filed a motion for substitution of judge for cause.  
Brim
, 241 Ill. App. 3d at 248.  The trial judge denied the defendant's motion without transferring the matter to another judge for ruling.  On appeal, the Fourth District said, "[T]he trial judge against whom the motion is filed should not assess the truthfulness of the allegations," and concluded another judge should have heard and ruled on the motion.  
Brim
, 241 Ill. App. 3d at 249.  

The facts in 
Brim
 are significantly different from those present here.  In 
Brim
, the defendant's motion contained specific allegations of conduct evidencing prejudice.  The court explicitly found the defendant had "sufficiently alleged" prejudice 
before
 concluding the defendant was entitled to a hearing before another judge.  
Brim
, 241 Ill. App. 3d at 249.  Here, Antoine has failed to make a threshold showing of prejudice.  Moreover, his conclusory allegations of prejudice and hostility lack support and specificity.  Because of these defects in Antoine's motion, even if we were to find Antoine did not waive review, we would conclude Antoine was not entitled to a hearing on the motion before another judge.

FRANKS
 HEARING

Antoine contends the trial court erred in denying his motion challenging the truthfulness of the affidavit for a search warrant under 
Franks v. Delaware
, 438 U.S. 154 (1978) without a hearing.  Antoine's motion was based on the following quote that appeared in the complaint Villanova completed:

"That a latent print was recovered from the tunck [
sic
] area of the victim's vehicle where she indicated the offender had placed his hand and that such latent print is 
consistent with
 fingerprints belonging to an individual identified as Nathan Antoine."  (Emphasis added.)

The report from the latent print examiner on which this portion of the complaint was based, stated:

"*** a 
tentative identification
 was made on the latent impression *** to the Left Thumb *** of Nathan J. Antoine.  In order for a complete identification to be made, the original latent lifts need to be submitted to the Chicago Police Department Latent Unit."  (Emphasis added.)

In denying Antoine's motion, the court said:

"*** When there's a tentative identification, that means more than just a possibility, it means something where the officer, the examiner is saying that these prints do match.  I am not going to make a positive identification until some later time, but these prints do match.  And Officer Villanova putting in his complaint that the print is consistent is not misleading, it's not a falsehood, and I don't see how you can stretch it out to make an argument that it wasn't sufficient for the officer to put down that the prints are consistent."  

Antoine contends he met his burden under 
Franks
 entitling him to a hearing on his motion.  He says Villanova's characterization of the latent print was false and misleading in light of the report from the examiner.  In support of his argument, Antoine says " '[t]entative' means uncertainty whereas 'consistent' means in agreement."  

Antoine also contends this misrepresentation was particularly damaging because, without it, probable cause did not exist.  What remained, Antoine says, was an uncertain fingerprint identification, the victim's general description of the offender, and her statement that he drove a small dark-colored, two-door car.  Without the search warrant, the police would not have obtained the seats from Antoine's car that had Rose B.'s blood stains on them.  This, Antoine contends, was evidence critical to the State's case.

Again, Antoine has waived this issue by failing to raise the matter in his motion for a new trial.  See 
Enoch
, 122 Ill. 2d at 186.  If we were to address it on the merits, we would conclude the trial court did not abuse its discretion in denying Antoine’s motion for a 
Franks
 hearing. 

Under 
Franks v. Delaware
, a defendant is entitled to a hearing on the veracity of the affidavit used to procure a search warrant if: (1) he makes a “substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit”; and (2) the allegedly false statement is necessary to the finding of probable cause.  
Franks
, 438 U.S. at 155.

A “substantial preliminary showing” requires more than mere denials by the defendant but less than proof by a preponderance of the evidence.  
People v. Lucente
, 116 Ill. 2d 133, 152, 506 N.E.2d 1269 (1987).  This threshold requirement discourages abuse of the hearing process.  
Lucente
, 116 Ill. 2d at 151.  

Whether the defendant has made a “substantial preliminary showing” is a matter within the trial court’s discretion.  
People v. McCoy
, 295 Ill. App. 3d 988, 996, 692 N.E.2d 1244 (1998).  We will not disturb the trial court’s ruling absent an abuse of that discretion.

Antoine contends Villanova’s statement in the search warrant affidavit that the latent print found on Rose B.’s car was “consistent with” Antoine’s known prints was a false statement because the examiner’s report said the examiner had made a “tentative identification.” 

According to Webster’s Third New International Dictionary 
(1993), the 
phrase “tentative identification” could be interpreted to mean a provisional showing of sameness.  Webster’s Third New International Dictionary
 1123, 2357.  “Consistent” can be interpreted as showing no significant contradictions.  Webster’s Third New International Dictionary
 484.  While not perfectly identical, these interpretations are not contradictory.  

Even if we did not agree with the trial court’s interpretation of “tentative identification,” we cannot substitute our judgment for the court's.  Because “tentative identification” can be reasonably interpreted in a manner that does not render it contrary to the phrase “consistent with,” the trial court did not abuse its discretion in finding Villanova's use of “consistent with” was not a false statement. 

Had Antoine met the threshold requirement, we would conclude he was not entitled to a 
Franks
 hearing in any case because the search warrant complaint, had it referred to a "tentative identification," established probable cause.  To determine whether probable cause existed in a complaint for a search warrant, the magistrate judge must consider whether, given all the circumstances set forth in the complaint, a “fair probability” exists “that contraband or evidence of a crime will be found in a particular place.”  
People v. Hickey
, 178 Ill. 2d 256, 285, 687 N.E.2d 910 (1997) (citing 
Illinois v. Gates
, 462 U.S. 213, 238-39 (1983)).  In reviewing the magistrate judge’s decision to issue a search warrant, our role is to ensure he had a “substantial basis” for concluding probable cause existed.  
Hickey
, 178 Ill. 2d at 285 (citing 
Gates
, 462 U.S. at 238-39).

People v. Hickey
 is particularly instructive.  In that case, the defendant contended the trial court erred in denying him a 
Franks
 hearing because the search warrant affidavit contained a misrepresentation.  The affidavit said “[t]he genetic markers from [the defendant]’s DNA testing 
matched
 the genetic markers of the semen obtained from the victim.”  (Emphasis added.)  
Hickey
, 178 Ill. 2d at 283.  The report on which the affidavit was based said the defendant “demonstrates a DNA profile that is consistent with the evidence profiles and 
could be
 the donor of the seminal material identified. *** However, it 
will be necessary
 to submit additional blood and saliva standard samples from [the defendant] for 
confirmatory
 analysis.”  (Emphasis added.)  
Hickey
, 178 Ill. 2d at 283.  On appeal, rejecting the defendant’s contention, the court did not consider whether the defendant made the threshold showing of a false statement.  Rather, the court concluded the preliminary match between the defendant’s DNA and the semen was sufficient to establish probable cause.  
Hickey
, 178 Ill. 2d at 286.  

In this case, had the complaint stated that the print examiner made a “tentative identification” of the latent impression to a print known to belong to Antoine, the complaint still would have established probable cause.   In addition to information about the fingerprint identification, the complaint for the search warrant stated Rose B. had described the offender as a light-skinned black male approximately 40 years old and that Antoine fit that description.  According to the complaint, Rose B. said the assault took place in a small dark-colored, two-door car with passenger front-end damage.  Antoine’s neighbor confirmed that Antoine drove a car fitting that description, and officers saw a car fitting that description in Antoine’s garage.  The complaint also said a maroon, two-door Chevy compact was registered to Antoine’s home.  

Given the tentative identification of the fingerprint in addition to the other material contained in the affidavit, Judge Nowinski had a substantial basis to conclude probable cause existed to search Antoine’s residence.

FAILURE TO GRANT A CONTINUANCE

Antoine contends he is entitled to a new hearing on his post-trial motions and a new sentencing hearing because the trial court erred in denying Antoine’s request for a continuance to secure the presence of his newly-retained counsel.  On October 27, 2000,
(footnote: 3) at the hearing on the motion for a new trial that Foley filed on behalf of Antoine, Antoine told the court he wanted to fire Foley, expressing dissatisfaction with her performance.  Antoine had the following exchange with the court about hiring a new attorney:

“MR. ANTOINE: Your Honor, I have a problem here.

Ms. Foley refused to come see me in the jail.  When she did come to see me, she didn’t bring a new trial motion.

Through this proceeding for four years she has been very good, competent.  She hasn’t did [sic] anything that I asked her to do at all.

THE COURT: Mr. Antoine, other than telling me a story, are you firing -- 

MR. ANTOINE: I’m about to.  I’m filing a new trial motion myself, firing Ms. Foley off this case.

I have another attorney that 
I’m going to retain
.

THE COURT: This is set for sentencing today.

MR. ANTOINE: I understand.

THE COURT: I'm proceeding with the sentencing today.

MR. ANTOINE: Okay, with or without my permission, I mean without, you know, I don't want her to represent me, period.  She has been very incompetent.  She hasn't done anything I want her to do.  

THE COURT: Mr. Antoine, how far did you get in law school?

MR. ANTOINE: I didn't get anywhere in law school.

THE COURT: How do you know that what you're saying should have been done and Ms. Foley is wrong?

MR. ANTOINE: I know she is wrong.  She has never did [sic] anything that I asked her to do, period.

THE COURT: Well, let me say that she has given me, appeared in court as most competent, most efficient, and I don't see anything to default her for during the her [
sic
] performance in this case.

MR. ANTOINE: Well, the motion will state for itself, your Honor, what she did.  Ineffective assistance of counsel, due process violations.

THE COURT: Mr. Antoine, she is still your attorney.

MR. ANTOINE: I refuse to have her represent me, your Honor.

THE COURT: Are you ready to proceed to sentencing without her?

MR. ANTOINE: If you want to sentence me without her.

THE COURT: I’m asking you, do you want to represent yourself?

MR. ANTOINE: No, I don’t want to represent myself.  I already talked to an attorney, and 
I’m hiring an attorney
.

THE COURT: I’m not waiting for that.  Ms. Foley, you are still in the case.  I am not allowing you to leave.

MR. ANTOINE: Your Honor, I refuse to proceed.

THE COURT: Fine, we'll proceed whether or not you like it or not.

MR. ANTOINE: You would rather proceed without me, your Honor?  I won't be present.

THE COURT: You're stating for the record that you do not wish to be present for your sentencing?

MR. ANTOINE: I don't want to be sentenced with Ms. Foley representing me.

THE COURT: Well, she is still your attorney, and you are going to stay here for the sentencing.

MR. ANTOINE: Your Honor, I don't know what to do at this point, but I would ask that you would take my motion, and run through my motion, and see exactly what the violation is.

THE COURT: Have you shown Ms. Foley the motion?

MR. ANTOINE: I haven't shown her as yet.  She hasn't shown me this motion either.  I haven't seen this motion at all, period.

THE COURT: Well, look at it.

MR. ANTOINE: It is none of the issues that I wanted to address to the Court, not one of the issues; search warrant, complaint, line-up, it is none of the issues I wanted to address, your Honor.  This is the issue that I want to address, and I'm not trying to be disrespectful to your Honor, but it is right that I have a fair opportunity to have somebody competent to represent me.

THE COURT: Well, as I said, I found Ms. Foley to be competent.

She is going to stay here representing you.

MR. ANTOINE: I don't want to stay here in the courtroom.  

THE COURT: You are staying in the courtroom.

State, are you ready to proceed?

MS. SCHROEDER: Yes, Judge.

THE COURT: with regards to the motion for new trial, I have reviewed -- Mr. Antoine, have a seat.

MR. ANTOINE: Your Honor, I don’t want to sit here.  
I have an attorney.
  
I have already retained an attorney
.

THE COURT: Who is the attorney?

MR. ANTOINE: Uh?

THE COURT: Who is the attorney?

MR. ANTOINE: Robert Willis. 

THE COURT: I don’t see him here today.

Do you see him here today?

MR. ANTOINE: No.  He asked me to come in and get a continuance, your Honor.

THE COURT: He hasn’t filed an appearance, he is not the attorney of record.

MR. ANTOINE: 
He was paid six-thousand dollars
, your Honor.

THE COURT: Then maybe you should see about getting a refund on it.

Motion for a new trial is denied.” (Emphasis added.)

Antoine contends the trial court inappropriately interfered with his Sixth Amendment right to counsel when it denied his motion for a continuance.  Antoine says the trial court should have inquired into the validity of Antoine’s assertions that he had retained counsel.  In support of his contention, Antoine directs our attention to several cases in which the reviewing court held the trial court abused its discretion by denying a motion for a continuance without first inquiring into the truth of the defendant’s assertions.  See 
People v. Green
, 42 Ill. 2d 555, 248 N.E.2d 116 (1969); 
People v. Washington
, 195 Ill. App. 3d 520, 552 N.E.2d 1067 (1990).

Antoine also says there was no indication he asked for the continuance as a delay tactic.  On the contrary, he says his 
pro
 
se
 motion for a new trial, which was denied, alleged ineffective assistance of counsel.  He says he hired the new attorney to file a motion for a new trial to competently address his claims of ineffective assistance of counsel.  Antoine said this was not the first time he complained about Foley’s performance.  Antoine filed ARDC claims against Foley for incompetent representation.

There was another exchange between Antoine and the court that occurred on October 30, 2000:

"DEFENDANT ANTOINE: *** And, Your Honor, right at the present moment, my other attorney had told me that -- informed me that he could not come, and he told me to take the position of pro se and ask the Court that I have a continuance to do a Motion for Reconsideration for new trial.

THE COURT: Well, your motion for that has been filed, it has been considered, and it’s denied.  And you do not have any other attorney, because no one has filed any Appearance.  

DEFENDANT ANTOINE
: Well, he is on trial right now.”

The State implies Antoine made this motion as a delaying tactic.  The State emphasizes Antoine never asked the court for a specific or short continuance.  The State also says Antoine dismissed the efforts involved in coordinating the presence of the witnesses who testified at the hearing (including two sexual assault victims, two Chicago Police Detectives, an investigator from Champaign, and an investigator from the Cook County State’s Attorney’s Office.)  

A defendant’s right to counsel is absolute and unqualified, but his right to counsel of choice is limited.  
People v. Burrell
, 228 Ill. App. 3d 133, 141-42, 592 N.E.2d 453 (1992).  The exercise of the right to choice of counsel may be denied if it will unduly interfere with the administration of justice.  
Burrell
, 228 Ill. App. 3d at 142.  It is within the trial court’s discretion to determine when defendant’s right interferes with the orderly process of judicial administration.  
Burrell
, 228 Ill. App. 3d at 142.

The trial court must inquire into whether the request is being used merely as a delaying tactic.  
Burrell
, 228 Ill. App. 3d at 142.  The denial of a motion for continuance to obtain new counsel is not an abuse of discretion “if new counsel is not specifically identified or does not stand ready, willing, and able to make an unconditional entry of appearance instanter.”  
Burrell
, 228 Ill. App. 3d at 142.  

In 
People v. Burrell
, the assistant public defender had been appointed nine months earlier and was prepared to go to trial.  The defendant told the court he wanted to obtain private counsel.  His family tried to find a lawyer but lacked funds to do so.  On the day of trial, defendant told the court he had met an attorney who was willing to take his case.  The attorney had not filed an appearance or made any attempt to notify the court of his intention to take the case.  The attorney did not appear in court when the defendant said he would.  
Burrell
, 228 Ill. App. 3d at 143.  Affirming the trial court, we said, "[T]here was no evidence that the attorney was ready, willing, or able to take the case."  
Burrell
,  228 Ill. App. 3d at 143.  We found the trial court did not abuse its discretion in denying the defendant's motion for a continuance to retain private counsel.  
Burrell
, 228 Ill. App. 3d at 143.

The facts in 
Burrell
 are analogous to those in the present case.  On the day of the sentencing, Antoine told the court first that he was "going to retain" an attorney.  Shortly after, Antoine said he was "hiring an attorney."  Finally, after the trial court said it was not going to delay the sentencing while Antoine hired his attorney, Antoine said he had "already retained an attorney."  In addition, the court noted Willis had not filed an appearance in the case and was not present in court.  Also, there is no indication in the record Willis ever contacted the court to inform it of his intention to represent Antoine at any time, or ever appeared in court, or filed any pleadings on behalf of Antoine.

Antoine waited until the day of the sentencing hearing to tell the court he believed he had received ineffective assistance from Foley.  While the record shows Antoine disagreed with some of Foley's decisions on which motions to file, the record shows no instances in the three years prior to the sentencing hearing while Foley represented Antoine where Antoine requested other counsel or contended Foley was rendering incompetent representation.  

Antoine's contention that he had previously filed an ARDC claim against Foley for incompetence is misleading.  The record indicates that on July 28, 1998, Foley informed the court Antoine had filed an ARDC claim against her for conspiring with the State and failing to file a pre-trial motion.  Foley also said she had explained to Antoine pre-trial motions at that time were premature because the State had not yet filed its answer, presumably to the discovery request.  She told the court that Antoine had asked that his ARDC complaint be withdrawn, and the ARDC indicated to Foley she need not respond.  At the time, the court explicitly asked Antoine whether he wanted Foley to continue as his attorney, to which Antoine responded 
yes
.  

Antoine contends this case is analogous to 
Green
 and 
Washington
, where the trial courts' decisions to deny motions for a continuance were reversed.  They are not.

In 
Green
, the defendant requested a continuance on the day his case was set for trial because his newly retained attorney was in Washington on a case.  
Green
, 42 Ill. 2d at 556.  The defendant told the court that a church had paid the attorney.  The court denied his motion, appointed a public defender, and allowed the case to proceed to trial that same day.  Reversing and remanding for a new trial, the court said, "[W]e are of the opinion that the defendant's constitutional right was violated when the court, without any inquiry into the truth of the circumstances described by the defendant, summarily denied his request for a continuance and insisted that he go to trial that day, represented by an assistant public defender who had no opportunity to investigate the case."  
Green
, 42 Ill. 2d at 557.

Unlike the defendant in 
Green
, Antoine made conflicting statements to the court about whether he was going to or had already retained an attorney.  Moreover, there was no danger in Antoine's case of being represented by an attorney unacquainted with the case -- Foley had been working on his case for over three years at the time of sentencing. 

Similarly, 
Washington
 is distinguishable.  There, the court received a call from the secretary of the attorney the defendant said he retained.  Moreover, when the defendant made his motion for a continuance, he specifically requested a 
seven-day period
 to allow for the appearance of the attorney.  
Washington
, 195 Ill. App. 3d at 525.  Here, there was no such confirmation of Willis' intention to represent Antoine.  Moreover, Antoine's request for a continuance was not specific or limited in scope, lending support to the court's decision.

We are troubled by the fact that the trial court did not attempt to verify Antoine's final contention that he had already retained an attorney.  See 
Green
, 42 Ill. 2d at 557 ("It would have been a simple matter to verify the defendant's statement").  But, given Antoine's changing versions about whether he was going to or had already retained counsel, the complete lack of evidence that Willis was ready, willing, or able to take Antoine's case, and Antoine's last-minute claim Foley was ineffective, we find this case is more analogous to 
Burrell
 than to either 
Green
 or 
Washington
.  We conclude the trial court did not abuse its discretion in denying Antoine's motion for a continuance.

CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Antoine also contends the trial court erred by failing to consider his specific allegations of ineffective assistance of counsel.  Antoine says that according to 
People v. Krankel
, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), we are obligated to remand his case for an inquiry into his allegations without any consideration on the merits of his ineffective-assistance-of-counsel claims.  

We have noted the record shows that on October 27, 2000, Antoine told the court he wanted to file a 
pro
 
se
 motion for a new trial.  Antoine contends the 
pro
 
se
 motion he referred to during the hearing is the motion in the supplemental record titled "Defendant's Addendum Motion for New Trial."  This motion is not signed, dated, notarized, or file-stamped.  It is not part of the common law record, but, rather, was inserted in a supplemental volume by Antoine's appellate counsel.  Nothing in the record shows this motion was the motion Antoine was referring to on October 27, 2000, except Antoine's assertions in his brief.  Additionally, there is no indication Antoine ever presented this motion to the judge.  Thus, we will limit our review of Antoine's contention to the oral arguments he made to the court on October 27, 2000.

During that hearing, Antoine said Foley did not visit him in jail; and when she did, she did not bring a copy of the post-trial motion.  Antoine contended Foley did not raise any of the issues he wanted to raise post-trial.  He also made broad allegations of ineffective assistance of counsel and due process violations.  After saying Foley appeared as "most competent" and "most efficient," the court said it did not see any reason to question her performance in the case.

In 
Krankel
, the defendant filed a 
pro
 
se
 motion alleging ineffective assistance of counsel.  Both parties agreed the defendant should have had counsel, other than his originally appointed counsel, appointed to represent him at the post-trial hearing on his allegation of ineffective assistance of counsel.  The supreme court agreed and remanded the case for a hearing on the issue with new counsel.  
Krankel
, 102 Ill. 2d at 187-89.

The supreme court has since held that "new counsel is 
not
 automatically required in every case in which a defendant files a motion challenging the performance of his trial attorney."  (Emphasis added.)  
People v. Munson
, 171 Ill. 2d 158, 199, 662 N.E.2d 1265 (1996).  On the contrary, a trial court need only conduct a preliminary inquiry into the defendant's allegations.  
People v. Ramey
, 152 Ill. 2d 41, 604 N.E.2d 275 (1992).  

"A trial court's decision not to appoint separate counsel on an ineffective-assistance-of-counsel claim will not be erroneous if the underlying claim is deemed to be without merit or related to a matter of trial tactics."  
People v. Crane
, 145 Ill. 2d 520, 533, 585 N.E.2d 99 (1991).  "Only if the defendant's allegations indicate that trial counsel neglected the defendant's case, should the court appoint new counsel to represent the defendant." 
Ramey
, 152 Ill. 2d at 52.  

In 
People v. Ramey
, the supreme court, after reviewing the record, said it was sufficiently convinced that the defendant's allegations of ineffective assistance "were spurious, related to trial tactics or not supported by the record."  
Ramey
, 152 Ill. 2d at 52.  The court concluded the trial court committed no error in declining to appoint new counsel for the defendant to argue his post-trial motion of ineffective assistance of counsel.  
Ramey
, 152 Ill. 2d at 52.  

Here, the trial court did not allow Antoine the opportunity to obtain other counsel to argue his motion.  However, after a review of the record and Antoine's allegations of ineffective assistance of counsel, we conclude there was no showing Foley neglected Antoine's case.  Antoine's allegations were spurious, or related to trial tactics, or not supported by the record.  Our review of the record persuades us Foley vigorously and ably represented her client.  We see no need to remand this issue to the trial court for a hearing on Antoine's motion. 

SENTENCING

Antoine contends the sentencing provisions of 730 ILCS 5/5-5-3.2(b)(1), which allow extended sentences based on prior convictions, and 730 ILCS 5/5-8-4, which mandate consecutive sentencing in certain circumstances, violate the holding in 
Apprendi v. New Jersey
, 530 U.S. 466, 476 (2000).  In 
Apprendi
, the United States Supreme Court held that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged, submitted to a jury, and proven beyond a reasonable doubt.  
Apprendi
, 530 U.S. at 476.  In particular, Antoine says, these Illinois sentencing provisions permit the judge to impose an increased penalty without requiring notice of the facts that subjected the defendant to the increased penalty or a jury determination of whether those facts exist upon proof beyond a reasonable doubt.  

We have previously rejected an 
Apprendi
-based challenge to section 5-5-3.2(b)(1), relying on the analysis in 
People v. Dillard
, 319 Ill. App. 3d 102, 745 N.E.2d 185 (2001).  See 
People v. Pulgar
, 323 Ill. App. 3d 1001, 752 N.E.2d 585 (2001).  Our supreme court has also rejected an 
Apprendi
-based challenge to the Illinois consecutive sentencing provisions.  
People v. Wagener
, 196 Ill. 2d 269, 752 N.E.2d 430 (2001); 
People v. Carney
, 196 Ill. 2d 518, 752 N.E.2d 1137 (2001).  Antoine has given us no reason to depart from these holdings.

Antoine also contends that, even if the fact of a prior conviction does not fall within the holding of 
Apprendi
, the State should be required to provide notice and prove to a jury beyond a reasonable doubt that the prior conviction occurred within the previous 10 years and that the convictions arose from unrelated offenses.  Antoine provides no support for his contention.  Moreover, his analysis would lead to an absurd result: the State would be required to provide notice and prove to a jury the date of the conviction and that it was an unrelated offense, but not the basis for the conviction.  We reject this contention. 

CONCLUSION 

The trial court did not err in (1) refusing to transfer either Antoine's motion for recusal or his motion for substitution of judge to another judge, (2) denying Antoine's motion for a 
Franks
 hearing, (3) denying Antoine's motion for a continuance, or (4) rejecting his claims of ineffective assistance of counsel without holding a 
Krankel
 hearing.  We also have considered Antoine's contentions regarding the constitutionality of certain sentencing provisions and hold these contentions are without merit.  We affirm Antoine's convictions and sentences. 

Affirmed.

HOFFMAN, and HALL, JJ., concur. 

FOOTNOTES
1:
While the motion indicated it was a motion for substitution of judge as of right, it did not meet the requirement of 725 ILCS 5/114-5(a), which governs such motions.  Section 114-5(a) requires the defendant to file the motion "[w]ithin 10 days after [the case] has been placed on the trial call of a judge.”  725 ILCS 5/114-5(a).  Because Antoine’s motion was filed a year and a half after the case was assigned to Judge Nowinski, section 114-5(a) is inapplicable.  See 
People v. Johnson
, 159 Ill. 2d 97, 122, 636 N.E.2d 485 (1994).  

2:
Antoine attached a copy of an amended motion for substitution of judge for cause dated April 27, 1999, to his 
pro
 
se
 addendum motion for new trial.  This substitution motion is not file-stamped by the court and was not mentioned in Antoine’s briefs on appeal.  We will disregard this amended motion.

3:
The transcript for this hearing is dated September 27, 2000.  We believe this is a typographical error.  The trial did not conclude until September 28, 2000, at which time the court scheduled the sentencing hearing for October 27, 2000, with post-trial motions to be filed before that date.