FIRST DIVISION
May 27, 2008

No. 1-06-2816

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY TUCKER, | ) | Honorable |
| | ) | Marcus R. Salone, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

This case concerns a constitutional right so highly valued that harmless error analysis will not be applied to its violation. We refer to a criminal defendant's right to retained counsel of his choice.

Defendant Larry Tucker was convicted by a jury of two counts of criminal sexual assault. He was sentenced to two consecutive four-year terms in prison.

The main issue on appeal is whether the trial court abused its discretion in denying defendant's motion for a continuance to substitute counsel after a brief inquiry about the circumstances of the request. Defendant also contends the trial court erroneously instructed the jury pursuant to IPI 3.11, and the trial judge's instructions to the jury unduly pressured a minority juror. We reverse and remand.

FACTS

1-06-2816

At trial, defendant's daughter, L.B., testified defendant sexually assaulted her on December 18 or 19, 2004, and twice a week for several months afterward. The last assault occurred on April 16, 2005, L.B.'s 14th birthday. On May 15, 2005, L.B. told her mother defendant had raped her. L.B.'s friend and cousin testified L.B. told them her father had raped her. Two detectives testified defendant made unmemorialized, incriminating statements about an incident that occurred in January 2005. The defendant told detectives L.B. had asked him about sex, and he "showed" her by touching his penis to her vagina.

The defense presented evidence that on August 3, 2005, L.B. told a defense investigator she had fabricated the allegations. She signed a typed version of her statement. L.B. returned to her original statement at trial. She testified she had lied to the investigator because her father's friends had threatened her.

DECISION

Defendant contends the trial court abused its discretion when it denied his request to change counsel. He contends the court failed to conduct an adequate inquiry into the circumstances surrounding his request.

On the date scheduled for defendant's jury trial, Mark Gottreich, defendant's privately retained attorney, told the trial judge he had "lost contact with [his] client" since the

2

last court date, approximately three months earlier.  He told the court defendant did not want him as his attorney and had hired a new attorney.  The judge replied, "Oh, well, what can I tell you? It may be a basis for some further review.  No, you're going to trial today, sir."

When the case was recalled later that day, the following colloquy took place:

"THE COURT: *** Mr. Tucker, you said that when this case was originally called--I don't know if it was you or counsel who indicated that you had retained another attorney.

THE DEFENDANT: Yes.

THE COURT: Who is that?

THE DEFENDANT: Jerry Lipschultz (phonetic spelling) I believe.  My brother know who he is out there.

THE COURT: Have you ever talked to that person?

THE DEFENDANT: Yes.

THE COURT: Okay.  Where did you talk to that person?  Where were you when you had that conversation?

THE DEFENDANT: Over the phone.  My family

talked to him.

THE COURT: You've not talked to him?

THE DEFENDANT: Yes.  He told me to call him today after court.

THE COURT: Okay.  So, to the best of your knowledge, he has not been given any money?

THE DEFENDANT: No.  He told me to call him after the Court today.

THE COURT: Okay.  He was not here today?

THE DEFENDANT: No.

THE COURT: Do you know what he looks like?

THE DEFENDANT: No.

THE COURT: Okay.  Well, I know a Lipschultz, who's not present.  And it should also be indicated that no one other than counsel of record has stepped up on behalf of Mr. Tucker here today. All right.

MR. GOTTREICH [Defense Attorney]: Judge, just for the record, what my client indicated to me today was that he wanted a different attorney. That was also indicated by his family who's here today.  And I made that apparent to the Court earlier and asked to withdraw based on that.

4

1-06-2816

THE COURT: I understand. This matter has been set for trial on at least two other occasions."

Following the above discussion, the parties proceeded to the jury trial.

The sixth amendment to the United States Constitution provides: "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. The right to retained counsel of one's choice "has been regarded as the root meaning of the constitutional guarantee" in the sixth amendment. United States v. Gonzalez-Lopez, 548 U.S. 140, __, 165 L. Ed. 2d 409, 419, 126 S. Ct. 2557, 2563 (2006), citing Wheat v. United States, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 148-49, 108 S. Ct. 1692, 1697 (1988); Andersen v. Treat, 172 U.S. 24, 30, 43 L. Ed. 351, 353, 19 S. Ct. 67, 70 (1898).

The right does not depend on whether defendant received a fair trial or was prejudiced by the representation he received. Gonzalez-Lopez, 548 U. S. at __, 165 L. Ed. 2d at 419, 126 S. Ct. at 2563. Deprivation of the right is a "structural error" not subject to harmless error review. Gonzalez-Lopez, 548 U. S. at __, 165 L. Ed. 2d at 420, 126 S. Ct. at 2564-65. That is,

"In sum, the right at stake here is the right

5

1-06-2816

> to counsel of choice, not the right to a fair
> trial; and that right was violated because
> the deprivation of counsel was erroneous.  No
> additional showing of prejudice is required
> to make the violation 'complete.' "
> Gonzalez-Lopez, 548 U. S. at __, 165 L. Ed.
> 2d at 418, 126 S. Ct. at 2562.

The right to counsel of choice, while fundamental, may be limited in some cases.  A criminal defendant has no right to select an attorney he cannot afford, or one who is not a member of the bar, has a conflict of interest, or declines to represent him.  People v. Howard, 376 Ill. App. 3d 322, 335, 876 N.E.2d 36 (2007), citing Wheat, 486 U.S. at 159, 100 L. Ed. 2d at 149, 108 S. Ct. at 1697.  A defendant who abuses the sixth amendment in an attempt to delay trial and thwart the effective administration of justice may forfeit his right to counsel of choice.  Howard, 376 Ill. App. 3d at 335; People v. Childress, 276 Ill. App. 3d 402, 413, 657 N.E.2d 1180 (1995).

It is within the trial court's discretion to determine whether the defendant's right to selection of counsel unduly interferes with the orderly process of judicial administration. People v. Burrell, 228 Ill. App. 3d 133, 142, 592 N.E.2d 453 (1992).  A determination of the issue turns on the particular

6

facts of each case.  People v. Little, 207 Ill. App. 3d 720, 724, 566 N.E.2d 365 (1990).

"In balancing the judicial interest of trying the case with due diligence and the defendant's constitutional right to counsel of choice, the court must inquire into the actual request to determine whether it is being used merely as a delaying tactic." Burrell, 228 Ill. App. 3d at 142.  Factors to be considered include: whether defendant articulates an acceptable reason for desiring new counsel; whether the defendant has continuously been in custody; whether he has informed the trial court of his efforts to obtain counsel; whether he has cooperated with current counsel; and the length of time defendant has been represented by current counsel.  Childress, 276 Ill. App. 3d at 411; Burrell, 228 Ill. App. 3d at 142.  The court does not abuse its discretion in denying a motion if new counsel is not specifically identified or does not "stand ready, willing, and able" to make an appearance on defendant's behalf.  Burrell, 228 Ill. App. 3d at 142.

Defendant contends there is no evidence he requested new counsel in order to delay the proceedings.  Defendant informed the court he had hired new counsel.  He identified the new attorney by name.  Defendant had been in continuous custody and had not requested any trial continuances prior to the motion for

1-06-2816

new counsel. The case had been set twice for a bench trial. On both dates, the case was continued because one of the State's witnesses was unavailable. On the last date before trial, the parties participated in a 402 conference, after which a date was set for jury trial. All other continuances in the case were by order of court or by agreement of the parties.

The State contends defendant's request, made on the day of trial and nine months after the case had been placed on the docket, threatened the efficient administration of justice. The trial court's inquiry revealed: no new counsel stood ready and able to make an appearance on defendant's behalf; defendant had not met with or paid his newly-"hired" attorney; and defendant's case had been set for trial on at least two separate occasions.

The State contends defendant failed to articulate a reason why he wanted new counsel and never filed a motion for a continuance or specified a length of time for a continuance. The defendant had been represented by Gottreich's firm for eight months before defendant requested new counsel. The State suggests defendant may have wished to delay his trial in hopes that L.B. would refuse to testify against him.

Several decisions have held a trial court erroneously denied the defendant's motion for a continuance to substitute counsel by failing to conduct an adequate inquiry into the request.

8

1-06-2816

In <u>People v. Bingham</u>, 364 Ill. App. 3d 642, 644, 847 N.E.2d 903 (2006), the defendant told the trial court he wished to be represented by Earl Washington, who was representing defendant in other pending cases. The record showed Washington had contacted the assistant state's attorney the previous day, although the subject matter of the message was unclear. The case had been pending only three months. No prior continuances or prior motions had been filed. The court held the trial court "should have conducted an inquiry into the circumstances and the purposes of the motion before making its ruling." <u>Bingham</u>, 364 Ill. App. 3d at 645. The conviction was reversed.

In <u>People v. Little</u>, 207 Ill. App. 3d 720, 566 N.E.2d 365 (1990), the defendant moved for a continuance on the date of trial because the private counsel retained by his family was misinformed of the trial date and was not present in court. He told the court the attorney had been paid for his services. The defendant was in custody during the period between his arrest and the date of trial and therefore was compelled to rely on his family to retain private counsel. <u>Little</u>, 207 Ill. App. 3d at 727. None of the previous continuances was requested by the defendant. The trial court conducted no inquiry into the truth or falsity of defendant's assertions, nor did the court ask how long a continuance would be necessary to secure retained

9

1-06-2816

counsel's appearance. <u>Little</u>, 207 Ill. App. 3d at 727. The conviction was reversed.

In <u>People v. Washington</u>, 195 Ill. App. 3d 520, 523-24, 552 N.E.2d 1067 (1990), the public defender informed the trial court on the day of trial that the defendant's family had retained an attorney for the defendant, who asked for a week-long continuance. The appellate court held, "[i]f the trial court suspected that defendant's representation that a private attorney had been hired was being used as a delaying tactic, it very easily could have confirmed or dispelled its suspicion by inquiring further into the employment of the attorney." <u>Washington</u>, 195 Ill. App. 3d at 526. The conviction was reversed.

In <u>People v. Green</u>, 42 Ill. 2d 555, 248 N.E.2d 116 (1969), the defendant told the trial court his privately retained attorney was in Washington on a case. He said the attorney had been paid by his church. The supreme court held the trial court erred in failing to inquire into defendant's assertions. The court said, "[i]t would have been a simple matter to verify defendant's statement." <u>Green</u>, 42 Ill. 2d at 557. The conviction was reversed.

See also <u>People v. Basler</u>, 304 Ill. App. 3d 230, 232, 710 N.E.2d 431 (1999), affirmed as modified and remanded, 193 Ill. 2d

10

1-06-2816

545, 740 N.E.2d 1 (2000) (conviction reversed because trial court failed to ask the defendant if she had a specific attorney in mind or inquire into the reasons for the request); People v. Ritchie, 66 Ill. App. 2d 417, 418, 213 N.E.2d 306 (1966) (the defendant, who had been continuously incarcerated, believed and represented to the court that his family or friends were obtaining private counsel; there were no facts showing the defendant's purpose was dilatory; the conviction was reversed).

In this case, as in Green, Little, and Washington, defendant claimed someone else hired a private attorney to represent him; the private attorney had not filed an appearance; and the court did not attempt to verify the employment of the private attorney. As in Bingham and Washington, the defendant identified the new attorney by name. As in Ritchie, the defendant was continuously incarcerated and relied on his family to retain an attorney for him. There is no evidence in the record that defendant did anything to delay the court proceedings prior to the trial day. Defendant had not requested any continuances prior to his request to substitute counsel. There is no indication the defendant or his family could not afford to hire new private counsel. Nor is there any explanation of how a lawyer can "lose contact" for the three months before trial with a client who is in jail across from the courthouse.

11

1-06-2816

We recognize the presence of factors that apparently led the trial court to insist that trial proceed with Gottreich as defense counsel. The case had been pending nine months. It was set for trial on the day defendant requested a change of lawyer. The defendant told the trial court the new lawyer had not been paid. The new lawyer had not filed an appearance and had not appeared in court. Some of these factors turn up in decisions that find no violation of the right to counsel.

In Burrell, 228 Ill. App. 3d at 143, the defendant had asked for a new attorney four months before the trial date. The trial court informed him the only way he would get another attorney was if he retained private counsel, which defendant did not do. On the day of trial, defendant told the trial court he had just met a private attorney who was willing to take his case. The attorney did not file an appearance or inform the court of his involvement with the case. The attorney was in court that morning and said nothing about representing the defendant. The appellate court affirmed the trial court's denial of defendant's motion. The court held, "[a]lthough defendant was in continuous custody for eleven months, he had ample time to retain private counsel." Burrell, 228 Ill. App. 3d at 143.

In People v. Antoine, 335 Ill. App. 3d 562, 577, 781 N.E.2d 444 (2002), at the hearing on his motion for a new trial, the

defendant told the court he wanted to fire his attorney, expressing dissatisfaction with her performance. Defendant first told the court he was "going to retain" another attorney, then said he was "hiring an attorney," then said he had "already retained an attorney." He identified the attorney as Robert Willis and said Willis asked him to get a continuance. He said he had paid Willis $6,000. The trial court noted Willis had not filed an appearance in the case and was not present in court. The appellate court held it was "troubled by the fact that the trial court did not attempt to verify Antoine's final contention that he had already retained an attorney." Antoine, 335 Ill. App. 3d at 582. Nevertheless, given the defendant's changing versions about whether he had retained counsel, and the complete lack of evidence that Willis was ready, willing, or able to take Antoine's case, the trial court did not abuse its discretion in failing to grant a continuance. Antoine, 335 Ill. App. 3d at 582.

Here, we focus on the trial court's failure to inquire more thoroughly into defendant's request. Among other things, the trial judge did not ask the defendant why he wanted another lawyer, what he meant when he said he "hired" Jerry Lipschultz, or whether he could afford to hire Lipschultz. Nor did he ask defendant's family members, who were present in the courtroom,

13

about any arrangements to hire Lipschultz. The judge made no attempt to contact Lipschultz or Lipschultz's office to learn whether he was willing and able to represent the defendant. He failed to ask Gottreich why he had lost contact with the defendant during the three months leading up to the trial date, a time when defendant was in custody. The trial court made no finding that defendant's attempt to hire a new lawyer was a delaying tactic and not in good faith.

Given the failure of the trial court to inquire into the "circumstances and purposes" of the defendant's desire to change lawyers, Bingham, 364 Ill. App. 3d at 645, viewed in light of the right to retained counsel of one's choice being "regarded as the root meaning of the constitutional guarantee" in the sixth amendment, Gonzalez-Lopez, 548 U.S. at __, 165 L. Ed. 2d at 419, 126 S. Ct. at 2563, we conclude reversible error was committed and a new trial is required.

The other issues raised by the defendant are unlikely to recur in a retrial of this case and need not be considered.

For the reasons set forth the convictions against the defendant are reversed and the cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

CAHILL, P.J., and R. GORDON, J., concur.

14